GULF & SHIP ISLAND RAILROAD COMPANY *v.* WIRT ADAMS, STATE REVENUE AGENT.

YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* WIRT ADAMS, STATE REVENUE AGENT.

TWO CASES.

1. RAILROAD COMMISSION. *Inferior tribunal. Code* 1892, § 90. *Certiorari.*

The railroad commission is an inferior tribunal, within the meaning of Code 1892, § 90, providing that *certiorari* may be had to review the judgment of all tribunals inferior to the circuit court.

2. SAME. *Code* 1892, § 89.

*Certiorari* lies to correct mistaken findings of fact by the railroad commission induced by an error of law apparent on the record, the finding of a fact contrary to law, or the making of an order beyond its power, although Code 1892, § 89, confines the courts on *certiorari* to questions of law appearing on the face of the record and proceedings.

3. SAME. *Privilege taxes. Railroads. Classification. Laws* 1898, *ch.* 5, *p.* 23, *sec.* 66.

The provision of sec. 66, Laws 1898, ch. 5, p. 23, empowering the railroad commission, annually on the first Monday of August, to classify railroads for privilege taxes according to their charter exemption claims and gross earnings, if constitutional:

(*a*) Is prospective only and gives the commission no power to back classify; and

(*b*) The power conferred is judicial in its nature; hence

(*c*) Where certain railroads were classified for a number of years, without reference to charter exemptions from state supervision, they could not thereafter, for the purpose of privilege taxation for the same years, be back classified as railroads claiming exemption from state supervision.

4. SAME. *State revenue agent. Laws* 1894, *ch.* 34, *p.* 29, *secs.* 2–4.

The state revenue agent has no power, under Laws 1894, ch. 34, p. 29, secs. 2, 3, 4, to cause railroads to be back classified for the purpose of privilege taxation, since said sections refer to *ad valorem* taxation only, and the power of the railroad commission to back classify railroads for the purpose of privilege taxation cannot be inferred therefrom.

5. SAME. *Railroads. Per mile tax.*

A tax of a certain amount per mile on railroad franchises, without regard to varying conditions or values, is not a property tax, but a privilege tax proper.

6. SAME. *Ad valorem taxes. Code* 1892, § 3877.

Under Code 1892, § 3877, requiring the railroad assessors, in fixing assessments of railroads for *ad valorem* taxation, to take into consideration the value of their franchises, the value of the right of the companies to operate their railroads in the manner, on the conditions, and with the powers prescribed and granted in their several charters is meant.

7. SAME. *Assessment. Res adjudicata.*

Where the railroad assessors have assessed railroads for *ad valorem* taxes pursuant to Code 1892, § 3877, making it their duty to take the value of their franchises into consideration, and the taxes have been paid, the assessment is conclusive, in the absence of fraud; and hence, assuming that the privilege tax on railroads is a property tax, the railroads cannot be classified for the years in question, and made to pay the privilege tax which had not been assessed against them, fraud not being charged.

8. SAME. *Judicial notice.*

The court will take judicial notice that railroads were assessed and have paid *ad valorem* taxes for previous years, pursuant to Code 1892, § 3877, making it the duty of the railroad assessors, in fixing assessments of the roads, to take into consideration the value of their franchises.

Gulf & Ship Island Case. From the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Yazoo & Mississippi Valley Case. From the chancery court of, first district, Hinds county.

HON. ROBERT B. MAYES, Chancellor.

Adams, state revenue agent, began the Gulf & Ship Island case by a petition to the Mississippi Railroad Commission asking that tribunal to reclassify or back classify the railroad company for the years 1898, 1899, 1900, 1901, and 1902 for the purpose of privilege taxation and to have the railroad company classified *nunc pro tunc* for each of said years as being, and as having been, liable to the $10 per mile additional privilege tax provided for in sec. 66, p. 23, ch. 5, Laws 1898, to be paid by railroads claiming exemption from state supervision under maximum and minimum provisions in their charters. The Gulf & Ship Island Railroad Company appeared before the railroad commission and filed a written statement of its case, showing cause, etc., and urged upon that tribunal the questions which were afterwards presented to the courts, and made of record all the facts upon which the questions arose. The railroad commission adjudged invalid all defenses, and rendered a judgment reclassifying and back classifying the railroad to the full extent prayed for by Adams, state revenue agent, in his petition. Thereupon the Gulf & Ship Island Railroad Company applied for and obtained a writ of *certiorari* to the Mississippi Railroad Commission, and carried the case into the circuit court. The circuit court, on final hearing, dismissed the writ and entered a judgment confirming the reclassification and back classification made by the railroad commission, and the Gulf & Ship Island Railroad Company appealed to the supreme court.

The Yazoo & Mississippi Valley case was begun by bill in equity, filed by Adams, state revenue agent, against that company. By an agreement between the parties it was stipulated that the question should be litigated in the chancery court

whether the railroad commission had power to reclassify or back classify the railroad for privilege taxation, etc. From a decree in complainant's favor, overruling a demurrer to the bill of complaint, the defendant railroad company appealed to the supreme court.

The two cases were argued and submitted together, and were decided by the one opinion following.

[For the report of previous suits between the parties, based upon the same facts and demands, which went off for want of a classification under sec. 66, p. 23, Laws 1898, ch. 5, see *Gulf & Ship Island Railroad Company* v. *Adams,* and *Yazoo & Mississippi Valley Railroad Company* v. *Adams,* 83 Miss., 306.]

*McWillie & Thompson, James H. Neville,* and *E. J. Bowers,* for appellant, Gulf & Ship Island Railroad Company.

1. Does the writ of *certiorari* lie in this case?

That the railroad commission is a tribunal inferior to the circuit court within the meaning of Code 1892, § 90, cannot be doubted. It must be treated as inferior to the circuit court, else it would not be inferior to the supreme court of the state, because the latter has only appellate jurisdiction. The railroad commission is inferior to the circuit court or it is a supreme tribunal, one or the other. That it is not supreme, beyond the control of the judicial department of the government, has been manifested by a number of decisions of this court, some of them being rendered in cases in which the commission was a party to the litigation.

To deny the application of the writ will be, we respectfully submit, to deny the railroad, and all other railroads, the equal protection of the laws, contrary to the fourteenth amendment to the constitution of the United States, and we work it out this way:

By Code 1892, § 80, every taxpayer, except railroads, is given the right to an appeal from the "judgment as to the assessment of taxes" of the board of supervisors or the municipal au-

thorities of a city, town, or village. This does not apply to railroads, because the board of supervisors and municipal authorities have nothing to do with railroad taxation.

The railroad commission is alone charged with the matter of the assessment of railroad property. No provision is made by law for an ordinary appeal from the judgments of the commission, but by Code 1892, § 90, a *certiorari* does lie. The railroads have no vested right to the same remedy given other taxpayers, but they have a right to some remedy where other taxpayers are given a way of relief. The difference between an appeal and a *certiorari* relates only to a mode of procedure. In one the trial is *de novo;* in the other, upon the record; and in order to make them equally efficient the party who must proceed by *certiorari* is compelled to make his defense appear of record in the inferior tribunal. This done, the one remedy is practically as efficient as the other, and the party who is driven to a *certiorari* has it in his power to make that remedy substantially the equal of an appeal, and hence cannot (perhaps) claim that he has been denied the equal protection of the laws. But if he be denied an appeal and also a *certiorari* (and no other remedy be given him), he has been denied the equal protection of the laws.

The legislature has not the power, had it attempted to do so (which it has not done), to grant a right to a review by the judiciary of an assessment made against all the taxpayers of the state except railroads and to deny that right to railroads. It could and has given the railroads a different mode of procedure to have assessments reviewed from that given other taxpayers, and of this no complaint is made.

In the case of *Yazoo & Mississippi Valley Railroad Company* v. *Adams, State Revenue Agent,* 77 Miss., 777, the supreme court of this state settled the matter. ‧ Read, beginning at the last paragraph on said page, down to the end of the page.

2. Is the agreed statement of facts a part of the record upon this *certiorari* proceeding?

We think so, and for the following reasons:

(*a*) It was filed before the railroad commission *as a part of the record* before that tribunal. Of course every tribunal has control of its own record. It does not answer to say that the filing is the act of the clerk, and not of the commission, since the clerk is but the servant of the commission and acts for it.

(*b*) Our statute, Code 1892, § 89, regulating the "like proceedings" mentioned in sec. 90 of the code, expressly provides that on *certiorari* the reviewing court shall consider something more than the mere "record" of the inferior tribunal. The provision is: "And in any case so removed by *certiorari* the court shall be confined to the examination of questions of law arising or appearing on the facts of the record *and proceedings.*" If the reviewing court be confined to questions of law arising on the face of the record, as opposing counsel contend, then the words *"and proceedings"* are wholly meaningless. Some meaning must be given to them, according to a well-established canon of construction, if it can be reasonably done.

(*c*) The authorities hold that the question of the jurisdiction of an inferior tribunal is not determinable alone upon *certiorari* by the record proper, but jurisdictional facts may be inquired into outside of the record. 4 Ency. Pl. & Pr., 222, notes. The railroad commission being a tribunal of limited jurisdiction, its return to the writ should have contained the facts upon which it acted. *Marshman* v. *Todd,* 15 Ga., 25.

3. Has the state revenue agent power and authority in law to institute and prosecute this proceeding?

We submit that he has not. The revenue agent is an officer of the state, having only such powers as the legislature has seen fit to grant to him. His whole power and authority is derived from the statute, and is defined by the act of 1894, p. 29.

This proceeding is not a suit under sec. 2 of said act of 1894, for the recovery of past due and unpaid taxes due from appellant to the state. The litigation between the parties, decided

by this court in appellant's favor, *Gulf & Ship Island Railroad Company* v. *Adams, State Revenue Agent,* 83 Miss., 306, was such a suit, and it failed for want of an assessment or classification. Under the decision of this court in the case of *State Revenue Agent* v. *Tonella,* 70 Miss., 701, such a suit cannot be maintained by the revenue agent in the absence of an assessment made by the assessor. Hence, a classification or assessment of the railroad for the additional privilege taxes sought to be collected in the preceding suit between the parties to this second suit being, as this court decided in said preceding suit, a condition precedent to the maintenance of a suit for such additional privilege tax, the exact question before us is not the power of the revenue agent to sue, but his power to compel an assessment or classification of appellant. Such power, we repeat, is not conferred by the second section of the act of 1894.

Is it conferred by the third section of said act? Manifestly not, since that whole section of the act relates to the assessment of property which the county or municipal assessors should have assessed and to proceedings before the county board of supervisors and the municipal authorities of cities, towns, and villages. County and municipal assessors, boards of supervisors, and municipal authorities have nothing to do with the assessment or classification of railroads. The appellee in this case recognized that they had no power in the premises and instituted his proceeding before the railroad commission; he does not pretend to be proceeding under either sec. 2 or 3 of the act of 1894.

This leaves only sec. 4 of said act to be considered.

The very first line of the section is notable. It provides: *"If the property* which the revenue agent discovers to have escaped taxation belongs to any railroad," etc. The whole section is manifestly limited in its operation to *property* of railroads which has escaped taxation. Clearly, therefore, the section does not warrant this proceeding, unless the additional privilege taxes in controversy be a tax upon property. Conceding for

the sake of argument that the additional privilege tax sought to be collected is a property tax, and what result follows?

By sec. 112, Constitution 1890, taxation must be equal and uniform, and *property must be taxed in proportion to its value.* If, therefore, the tax involved be a property tax, this whole proceeding falls to the ground, since the property, whether it be the railroad track, the franchise, or any other property of appellant, can only be taxed according to value; and sec. 66, Laws 1898, p. 23, seeks to levy or impose the additional tax demanded without reference to value.

Appellee is at liberty to take either horn of the dilemma. If he stand upon the idea that the tax in controversy is a privilege, and not a property, tax, he has no power in the premises, and the railroad commission has none, under the act of 1894 (Laws 1894, p. 29), under sec. 4 or any other section of that act, and this whole proceeding is without warrant in law. If he claim that the tax in controversy is a property tax, then the act imposing it is void, since taxes on property must be laid in proportion to value. The tax involved is either a tax on property or it is not a tax on property, *one or the other.*

It is no answer to our proposition to say that the back assessment or classification was made by the railroad commission, and that it makes no difference at whose instance it was made, because the same reasoning applies with full force in negation of the power and authority of the railroad commission. So far as concerns back assessments or classifications of railroads, sec. 4 of the act of 1894, *supra,* defines and limits the power and authority of the railroad commission as well as of the state revenue agent. It only authorizes and empowers the commission to back assess *property.* The same dilemma is presented, with the same results, when we consider the act of 1894 (Laws 1894, p. 29), with reference to the power of the railroad commission as arises from its consideration touching the revenue agent's power. We will discuss the question of the power of the railroad commission in the next paragraph.

4. Has the railroad commission power and authority to classify a railroad for privilege taxes at other times than the dates expressly named in sec. 66, Laws 1898, p. 23?

We have already seen in the discussion of the last preceding question that such power is not conferred by the act of 1894.

There is no other statute than the act of 1894 empowering the commission to back assess, and no statute authorizing it to classify railroads for privilege taxes except sec. 66, Laws 1898. By the very terms of that section the railroad commission is required to classify the railroads "annually *on or before* the first Monday in August." This is a grant of power, but it is equally a negation of power beyond the terms of the grant. Power is not given to classify *after* the first Monday in August even for the taxes of a current year, and certainly the section falls far short of authorizing a retroactive classification.

5. Has the railroad commission, after it has classified a railroad for privilege taxes under and at the time specified in sec. 66, Laws 1898, p. 23, and the state has collected taxes thereunder, power and authority afterwards to set aside its previous classification and reclassify the railroad, thereby imposing a greater burden on the road?

The law is settled, as between the parties to this case, that classification is and was a condition precedent to a right of action against a railroad for privilege taxes under said sec. 66, Laws 1898. *Gulf & Ship Island Railroad Co.* v. *Adams, State Revenue Agent*, 83 Miss., 306. In that case Chief Justice Whitfield, speaking for this court, said: "There is no escape from the conclusion . . . that the classification has to be made with reference as well to such charter exemption claims as to such gross earnings." The railroad commission did classify in each of the years the appellant's railroad, and determined it to have been a third-class railroad.

Under the very terms of the act of 1898, and under the construction thereof by this court in the preceding case between these parties, the commission could not have classified appellant

in the years named without considering both "charter exemption claims" and "gross earnings."

Having classified the appellant, the commission must therefore be held to have done so, in the language of this court, "with reference as well to·such charter exemption claims as to such gross earnings." It could not have classified otherwise. The previous classification, assuming the validity of the act, sec. 66, Laws 1898, must necessarily be held to have been an adjudication that appellant was not a railroad claiming exemption from supervision under maximum and minimum provisions in its charter. Whether this judgment was right or wrong is, in the absence of fraud, beside the mark. Right or wrong, it was wholly the work of the state, acting by its constituted authority, the railroad commission, and is *res adjudicata.* It cannot, after its rendition and the collection of taxes thereon, be vacated or amended.

[Counsel further argued the constitutionality of the statute, Laws 1898, ch. 5, p. 23, sec. 66, and contended that it was violative of both the state and national constitutions; but as the court did not pass upon the questions thus presented, a synopsis of that part of the brief is not given.]

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant, Yazoo & Mississippi Valley Railroad Company.

The first ground of demurrer to the bill presents the question whether the railroad commission can make a retroactive classification under this act of 1898 after the expiration of the current fiscal year so as to bring these companies liable to this additional ten dollars per mile privilege tax, when the companies have already been classified and have paid the ordinary privilege tax as each current year progressed.

We now maintain that unless the classification is made during the current year it cannot be made at all. The railroad commission, on a question of privilege taxation, is without any authority in the law to make a classification which shall operate retro-

spectively. This classification was made in 1904, and under it this attempt is made to collect back privilege taxes when the years have long since expired in and for which the liability for those privilege taxes is sought to be imposed.

It is axiomatic in the law of taxation that the assessing body or tax-imposing body, whatever its name may be, must proceed under and by virtue of a statute; and if there is no such statute, then no tax can be imposed. It is hardly necessary to cite authority for that proposition, but if it were, the *Colonial Mortgage Co.* v. *Adams,* 82 Miss., 263, is enough.

This is not a question of legislative power, but one of authority of the railroad commission, which is a mere ministerial board; it is not a question of what the legislature might have authorized to be done, but only one of what the legislature has authorized to be done.

Now there is authority in the code and in the statute of 1894 fixing the powers of the state revenue agent for the making of back assessments on property for *ad valorem* taxes, but those powers are confined to the making of back assessments in that particular class of cases.

A back assessment of privilege taxes, on a retrospective classification for purposes of privilege taxation, is a thing wholly unknown to our laws. There is no statute which even squints at any authority conferred for such purpose. It is elementary that not only must there be statutory authority, but such authority as is given by the legislature must be followed with the utmost exactitude. 1 Cooley on Taxation, pp. 598, 604.

The act of 1898, which alone authorizes the classification in question, expressly declares that the railroad commission shall annually, on or before the first Monday in August, classify the several railroads; and it is perfectly manifest that the legislature provided that this annual classification is to be made on or before the first Monday in August for each current year. There is no provision whatever that it afterwards may be made, and we contend that it cannot be done.

The foregoing observations are all the more forcible when it is remembered that the operation of a privilege tax statute is highly penal. All contracts are made void if the privilege tax is not paid, and the delinquent is liable to indictment; and it, we think, was never the intention of the legislature that under this group of statutes there should be such a thing as the fixation of a retrospective liability. During the current year the railroad commission had the power (leaving out of view the other points in the case for the present) to make such classification and call upon the railroad company to pay this privilege tax, but it did not do so, but allowed the fiscal year to expire. Not having done so, the railroad company is not delinquent; it never was liable; and it cannot now be put in the attitude of delinquency because the railroad commission may see proper to undertake at this late day to make a classification with retrospective aspect.

Another ground of demurrer is as follows: "Because the said bill does not aver that this defendant, in and during the years therein respectively named, was under and because of the provision of said sec. 6 (of this defendant's charter) lawfully entitled to the exemption from the power and jurisdiction of said commission set forth in said bill."

The court below should have sustained this ground of demurrer for the following reasons:

The bill did not allege that in the years mentioned the railroad company was lawfully entitled to the immunity or exemption from supervision. Obviously the statute does not contemplate that railroad companies are to be fined for merely having claimed an exemption to which they were not entitled. So heavy an imposition is not allowed on a mere pretense or shadow. When the statute says that the ten dollars additional privilege tax is to be imposed "on each railroad claiming exemption," etc., it is to be read as if it ran in this wise: "On each railroad having an exemption and asserting the same." It takes the double event to make the company liable for the tax. It must both have it

and assert it. It was never intended to fine the railroad company for having an exemption clause in its charter which it would be lawfully entitled to assert if it saw proper so to do; nor, on the other hand, was it intended to fine the railroad company for making an unfounded claim that would not amount to anything before the courts, and where all that the commission would have to do to overturn the claim would be simply to disregard it.

To put the point a little differently: The additional tax is and must be considered to have been laid upon an available asset or value enjoyed by the railroad company, to be laid upon something which is practically a fairly substantial basis of a value for taxation—just as in our constitution it is provided that the increased values of railroad property may be assessed for taxes where the charter runs for a longer period than ninety-nine years, as is done in sec. 178.

It was never intended that the state should be pursuing the railroad company on duplicated and inconsistent demands. It was never intended that the railroad commission, being one agency of the state working in one office, should insist that the company was subject to its supervisory jurisdiction in the matter of rates, and should be imposing rates upon it, or undertaking to do so, and that at the same time the state revenue agent, another agent of the state, working in a different office, should be demanding taxes because the company is, or claims to be, not subject to supervision. Common fairness and justice requires that the state should plant itself somewhere, and assume a single and consistent position in regard to this matter.

When the state revenue agent, therefore, sues the company and demands additional privilege taxes as for a railroad claiming exemption, it must be taken that the demand is based upon a recognition of the fact that there is an exemption which may be claimed; and the state's bill, filed by the revenue agent, should so allege.

Another ground of demurrer is as follows: "The said bill does

not show or allege that in or during the years therein respective-
ly named the said railroad commission fixed or determined
any rates to be charged by this defendant upon that class of
persons or things named in said sec. 6 (of this defendant's
charter), which rates the said defendant refused to put in force
and observe; nor does said bill show or aver that the said rail-
road commission during any of said years was deterred from
fixing and determining any such rates to be charged by this
defendant by and because of the claim of this defendant that
it was exempt by said sec. 6 of its charter from the power and
jurisdiction of said commission as set forth in said bill."

The bill did not allege that the railroad commission fixed any
rates of freights or passenger fares which the company refused
to observe or that the commission was deterred from fixing such
rates because of any claim of exemption advanced by the de-
fendant.   It is true that the bill says that the defendant claimed
an exemption, but it does not say that this claim amounted to
anything more than a mere theoretical assertion of an abstract
right; it does not show that such claim produced any practical
results whatever, either on the action of the railroad commission
or in regard to the obedience or non-obedience by the defendant
of any order promulgated by the commission in regard to rates.
We submit that the bill, in order to have been good, should show
those facts.

Under this statute it takes the double event to make the com-
pany liable for the additional privilege tax.   The company must
both have the right and it must assert it.   It was never intended
to fine the company for having an exemption clause in its char-
ter which it would be lawful to assert if it saw proper so to do
and for making of a mere abstract claim of its right so to as-
sert it if it should see proper so to do, while at the same time
submitting to the orders and suggestions of the railroad commis-
sion.

To put it a little differently: In order to render the company
liable the company must have a right which it practically as-

serts and which it interposes as a barrier between it and the state, to prevent the state, through its appointed agency, the railroad commission, from working its will in the fixation of the company's rates. A mere abstract or academic right is not the thing intended to be taxed, and it is not intended to tax a mere protest, designed, and designed only, to keep straight a record of a right and to exclude the inference of a waiver by acquiescence.

[Counsel also argued the constitutionality of the statute, sec. 66, Laws 1898, p. 23, contending that it violated the state and national constitutions; but a synopsis of that part of the brief is not given, since the court did not pass upon the question.]

*Green & Green,* for appellee, in both cases.

1. The power existed in the railroad commission to back tax, classify, or assess, under ch. 34, Acts 1894, the additional privilege tax of ten dollars per mile on the railroad of appellant, claiming exemption from supervision by reason of the maximum and minimum provisions of its charter as to rates.

The commission exercised this power, and, upon notice, made the back-tax classification complained of. There is no dispute but that appellant claimed the exemption and enjoyed the privilege taxed, and the sole question is whether, after having enjoyed the privilege, the revenue legislation is so defective as to preclude the enforcement of the tax thereon.

On the former appeal it was held that a classification was necessary; and if there existed no power to make such classification, this court would have so declared, and not have treated the power as existing and as requiring exercise before liability could accrue. *Gulf & S. I. R. Co.* v. *Adams,* 83 Miss., 306 (s.c., 36 South. Rep., 144). The scope of the remedial legislation covered by ch. 34, Acts 1894, is stated in the broadest terms in the appointment of the state revenue agent with "power and . . . duty to proceed by suit in the proper court against all . . . persons, corporations, companies, and associations of per-

sons for all past due and unpaid taxes of any kind whatever."
Sec. 2. "Taxes of any kind whatever," due by persons or cor-
porations, includes every kind· of tax, privilege and *ad valorem.*
This ch. 34 was enacted to remedy the declaration in *Tonella* v.
*Adams,* 70 Miss., 702, that sec. 4192 of the code was unconstitu-
tional, and to distribute among the proper constitutional revenue
officers the powers of assessment conferred by sec. 4192 upon
the revenue agent. In sec. 4192 these powers, so generalized in
ch. 34, are made specific, and therein it is declared that "it is
the duty of the state revenue agent, when any person, corpora-
tion, property, business, occupation, or calling, liable to an *ad
valorem* or privilege tax, has escaped or shall escape taxation by
reason of not being assessed, or of not being demanded, or other-
wise, to *assess* the same," etc.  ·

"Assess" is here applied to both privilege and *ad valorem*
taxes. By Code 1892, § 3379, the commission was to "classify"
railroads for privileges taxes, and "classify" and "assess" have
thus the same contemporaneous construction, and this legislative
construction was in force when ch. 34, Acts 1894, was passed.
Sec. 3, ch. 34, following the broad scope of sec. 2, in amending
sec. 4192 of the code, provides that when the revenue agent dis-
covers that "any person, corporation, property, business, occu-
pation, or calling has escaped taxation by reason of not being
assessed," he shall give notice to the tax collector, who shall
make "the proper assessment" and give notice to the "person or
corporation whose property is assessed." "Business," "occupa-
tion," "calling"—all are subjects of privilege, and not *ad
valorem,* taxes.

The legislature would hardly impose a privilege tax and
provide a comprehensive scheme for collecting "all past due
and unpaid taxes of any kind whatever," and specifically pro-
vide for the back taxes on any "business," "occupation," or
"calling" being collected, and not provide for its execution.
The word "assess" in sec. 3 means to take such steps, under
the law, as to subject the "property," "occupation," or "call-

ing" to taxation by such procedure as is provided for its assessment or classification. *People* v. *Commissioners,* 174 N. Y., 431. The word *"property,"* in "whose *property* is assessed" in sec. 3, means both the occupation and calling—*i. e.,* privilege taxes and property taxes proper.

Section 3 provides for the classes of assessments to be made by the tax collectors of counties and municipalities, to be approved by boards of supervisors or of aldermen. Railroads were to be assessed, under sec. 112 of the constitution, by the railroad commission. So, after dealing with the general assessment of "occupations," "callings," "property," etc., by sec. 3, ch. 34, sec. 4 deals with railroads and their subjection to "all past due and unpaid taxes whatever." Having used "property" in sec. 3 as synonymous with "occupations" or "callings," in sec. 4 it uses this generic term in providing for the back taxation of railroads. The legislative intent was that all back taxes "of every kind whatever" were to be collected, and were embraced within the machinery provided therefor. So in interpreting sec. 4, as was done in *Railroad* v. *Adams,* 73 Miss., 648, this legislative purpose must be given effect. "Property" and "assessed" in sec. 4 should therefore be interpreted as embracing *privilege* taxes and as meaning *classification* therefor. *Woodruff* v. *Parham,* 8 Wall., 131. The statute, being remedial and in aid of revenue, has been uniformly construed liberally, and to give effect to the requirement that the burdens of taxation should be borne equally. Speaking of this legislation, it is said in *Railroad* v. *Adams,* 71 Miss., 752: "But it also shows that the legislative purpose was that all property of all descriptions which had escaped taxation . . . should be subjected to taxation."

Even if construed strictly, the *franchise* enjoyed is taxable as "property." *Coulson* v. *Harris,* 43 Miss., 728; *Reed* v. *Beall,* 42 Miss., 472; *Portwood* v. *Baskett,* 64 Miss., 216; *Railroad* v. *Heines,* 183 U. S., 66; *People* v. *Commissioners,* 174 N. Y., 431.

To restrict sec. 4 to *ad valorem* taxation would defeat the express purpose of the legislature, and, by strict construction, create an invidious exemption in favor of railroad privilege taxation, contrary to its requirements as to all other persons and corporations. Seeking by the broadest terms to enforce all back taxes, *ad valorem* and privilege, the legislature would, in veiled language, create an exemption in favor of railroads as to privilege taxes.

"Invidious exemptions are not favored, nor ought they to be, as they are in principle utterly opposed to the rule of equality, which ought always to prevail in imposing public burdens." *Railroad* v. *Philadelphia,* 101 U. S., 537.

As said in *Railroad* v. *Adams,* 73 Miss., 661: "The insuperable obstacle to this construction of the statute is that we are confronted at every step with a contrary legislative purpose."

2. The commission found that the appellant had escaped taxation on this franchise by reason of not being assessed, and there is no contention that this tax has been paid. The classification into first, second, third, and narrow-gauge railroads under the statute did not embrace this additional tax of $10 per mile as claiming the exemption. Notwithstanding the classification in first, second, third, and narrow-gauge classes, it was held in the former appeal that classification by reason of charter exemption claims was necessary. If the classification into first, second, and third-class railroads necessarily included, as by adjudication, the classification for the additional privilege tax by reason of claims of charter exemption, then on the former appeal the court would have held that the classification into the former classes necessarily included a classification into the latter, and that, therefore, there had been in legal contemplation, though not in fact, a classification according to said charter exemption claims. But the court adjudged that there had been no classification according to charter exemption claims, and reversed the case solely for this reason.

The classification into first, second, third, and narrow-gauge

railroads under sec. 66, ch. 5, Acts 1898, was not an adjudication of the claim for the additional privilege tax of $10 on railroads claiming exemption under their charters.

To constitute *res adjudicata* the question must be raised by the pleadings. *Hubbard* v. *Flynt,* 58 Miss., 270; *Davis* v. *Davis,* 65 *Id.,* 498; *Lorance* v. *Platt,* 67 *Id.,* 190.

In *Meacham* v. *Pinson,* 60 Miss., 217, there was a general decree in a suit upon a note promising to pay principal, interest, and attorneys' fees, in which no evidence as to attorneys' fees was adduced, and in this subsequent suit recovery was had. In *Dunlap* v. *Edwards,* 29 Miss., 43, it was held: "In order to give such effect to a former judgment, it is necessary not only that the action should be founded on the same cause of action embraced in the former suit, but that the cause of action in the second suit was embraced in the judgment rendered in the former action, . . . and it is well settled that it was competent to show that the cause of action of the second suit was not embraced in the former judgment."

The former classification as a third-class railroad was incomplete as a classification upon which to base the additional privilege tax of $10 per mile, as, concededly, the commission did not consider nor adjudge the charter exemption claim in making it, and in this judgment finds as a fact that the franchise has escaped taxation by reason of not having been included in the former judgment.

3. Section 66, ch. 5, Acts 1898, imposes a privilege tax on the franchise, and does not violate sec. 112 of the constitution.

Prior to *Adams* v. *Miss. L. Co.,* 84 Miss., 23 (s.c., 36 South. Rep., 86), wherein the opinion of a majority of the court held the *proviso* to sec. 8, Acts 1900, p. 44, rendered that section unconstitutional, our court had never held, if it can be so interpreted as so holding there, that the uniformity and equality clause of the constitution applied to privilege taxation. In *Holberg* v. *Macon,* 55 Miss., 114, 115, the intimation was to the contrary, and that in any event "all that is necessary in

levying them is that all persons pursuing the same occupation shall be taxed the same amount, or in the same ratio." The great weight of authority holds this view. 21 Am. & Eng. Ency. Law (2d ed.), 802. The *ad valorem* basis of taxation does not apply to privilege taxation. *Id.,* 805. *Adams* v. *Lumber Co., supra,* did not involve railroad taxation, and the court found no fault with the levy of a specific tax of $25 for each 500 acres, regardless of value or location.

By sec. 66 all railroads of the same class must pay the same amount of privilege tax, and so the taxation is equal and uniform upon all in the same class.

The amount of this privilege tax was fixed by the legislature, and it found as a fact that this exemption claim as a franchise should pay $10 per mile. There is no attack upon the reasonableness of the amount. Every presumption is invoked to support this legislative finding. *Erb* v. *Morach,* 177 U. S., 586. In *Coulson* v. *Harris,* 43 Miss., 737, 738, it was held that a "license is a franchise, and a franchise is recognized by the best authority as property, and is therefore the subject of taxation," and a specific privilege tax of $100 by the legislature upon a license was held valid. *Reed* v. *Beall, supra; Portwood* v. *Basket, supra.*

4. This proceeding against the Gulf & Ship Island Railroad Company to back-tax classify is not the splitting up of a cause of action.

Appellant was liable to two separate, distinct privilege taxes—the one, as a third-class railroad; the other, as a railroad claiming exemption from supervision. These two liabilities are not items in a running account, nor are they interdependent. The Gulf & Ship Island Railroad Company may be a third-class road, and be so assessed or classified, and may owe the privilege tax thereon; but whether it is a railroad, of whatever class, claiming exemption from supervision, is not determinable nor determined by its being a railroad of the third or any other class. The court on the former appeal held that the commis-

sion must classify into first, second, third, etc., classes accord-
ing to gross earnings, and then must also classify according
to charter exemption claims. Upon the former there must be
paid $20, $15, $10, or $2 per mile as the privilege tax on a
railroad of first, second, third, or narrow-gauge class; upon the
latter, no matter to which of said classes it belongs, an addi-
tional privilege tax of $10 per mile must be paid by each rail-
road claiming the exemption from supervision. If a classifica-
tion as a first, second, etc., class road and for charter exemption
claims must be made *uno flatu,* as it is admitted that in fact
the classification made did not embrace that of charter exemp-
tion claims, it would be the former classification that would be
invalid, and not the present one, which reaffirms the previous
classification into second and third classes, and now adds the
classification by reason of charter exemption claims.

The same evidence would not support recovery upon the two
causes of action. Payment of the one could be, and was, made
without payment of the other. The clauses of the statute to be
counted on are distinct. Suit for the privilege tax on a second
or third-class railroad, as was done, could be maintained with-
out reference to the classification for charter exemption claims
or of a privilege tax due therefor. As said in *Wilkinson* v.
*Telegraph Co.,* 68 Miss., 6: "The $25 provided by the act
cited is not a part of an entire demand, but it is a separate and
distinct thing, for which one entitled may sue and recover,
without suing for anything else, and such recovery is not a
bar to another action for a distinct thing." See also *Armfield*
v. *Nash,* 31 Miss., 361; *Drysdale* v. *Canning Co.,* 67 Miss.,
534; *McLendon* v. *Pass,* 66 Miss., 111; *Williams* v. *Luckett,*
77 Miss., 397; 14 Am. & Eng. Ency. Law, 798; *Wilkinson* v.
*Black,* 80 Ala., 329.

It is admitted that this additional privilege tax was not sued
for, nor recovered, nor paid. If taxes admittedly due could be
paid by the easy legal fiction of *res adjudicata,* every evasive
taxpayer could have himself sued for his full tax, and pay the

judgment, and then claim payment of all *ad valorem* or privilege taxes, under the principle that all taxes claimed should have been sued for in one suit, and as this was not done, the judgment was *res adjudicata.*

Argued orally by *R. H. Thompson,* for appellant, Gulf & Ship Island Railroad Company; by *Edward Mayes,* for appellant, Yazoo & Mississippi Valley Railroad Company; and by *Marcellus Green,* and *Garner W. Green,* for appellee.

Cox,* J., delivered the opinion of the court.

The first of the above-styled cases is here on appeal from a judgment of the circuit court of Hinds county, the case having been tried there on *certiorari* to the State Railroad Commission as assessors of railroads. The purpose of the writ was to bring before the court the record and proceedings of the commission in back-tax assessing and classifying the Gulf & Ship Island Railroad Company for each of the five years from March 1, 1898, to March 1, 1903, and to have judicially ascertained whether the commission had not transcended its powers in back-tax assessing and classifying the said railroad, and classifying it as a road claiming exemption from state supervision under maximum and minimum provisions in its charter, and assessing and classifying it for the payment of the privilege tax of $10 per mile for each of the years named, in addition to the privilege tax paid by it during each of said years as a railroad of the third class. The circuit court affirmed the judgment of the commission, and ordered a writ of *procedendo* to be issued.

The second of the said cases is here on appeal from the chancery court of Hinds county. It was heard and decided on demurrer interposed by the Yazoo & Mississippi Valley Railroad Company, appellant here and defendant below, to a bill filed by Wirt Adams, state revenue agent, in which complainant set

---

*Judge Calhoon, owing to illness, was off the bench when this case was argued, submitted, and decided. W. M. Cox, Esq., a member of the supreme court bar, was duly appointed, and presided not only in this case, but generally in the absence of Judge Calhoon.

up the order of the railroad commission of July 18, 1904, which found that the said railroad company had escaped taxation on its railroad for an additional privilege tax of $10 per mile for each of the years from March 1, 1898, to March 1, 1903, by reason of not having been assessed and classified as a railroad claiming exemption from state supervision under maximum and minimum provisions of its charter, and ordered and adjudged that the objections of said railroad company be overruled; that the classification of said railroad under sec. 66, ch. 5, p. 23, Acts 1898, into first, second, and third classes, according to its parts, made during each of said years (the privilege tax for such first, second, and third classes for such years having been paid), be confirmed; and that said railroad company and railroad be back assessed and classified, as a railroad claiming exemption from state supervision under maximum and minimum provisions in the charter for the said years, for the payment of the additional privilege tax of $10 per mile for each of said years on each mile of its railroad in the state. The bill prayed for a decree for $42,187.40 against said railroad company, with interest; that a lien be decreed for same against the property of said company; and, if said sum should not be promptly paid, that the property of the said company be sold to pay the amount so decreed to be due for said unpaid privilege taxes. The demurrer was overruled and decree entered for appellee.

In the consideration of the first case we are confronted *in limine* with the contention that the court upon *certiorari* cannot review the finding of fact by the commission, because the statute creating the remedy by *certiorari* (Code 1892, § § 89, 90) declares that the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings, and because the statute gives the commission no authority to sign a bill of exceptions, and, in fact, no bill of exceptions was taken. The reasons assigned may be conceded, but the conclusion does not follow. *Certiorari* is

the great corrective writ by which the superior courts exercise a supervisory power over inferior courts, tribunals, and boards which exercise judicial functions, and by which their records and proceedings are brought under review, to the end that all abuses of power may be corrected and that they may be held strictly to the jurisdiction marked out for them and prevented from transcending the powers by law conferred upon them. 4 Ency. Pl. & Pr., 10. The state railroad commission is an inferior tribunal within the contemplation of sec. 90 of the code, and is subject to the supervision and control of the superior courts of the state through the writ of *certiorari*. *Railroad* v. *Adams,* 77 Miss., 777 (25 South. Rep., 355).

A mere mistake of fact by the commission will not be corrected by *certiorari;* but a mistaken finding of fact induced by an error of law apparent upon the record, the finding of a fact contrary to law, or the making of an order beyond the cognizance and power of the commission, can and will be corrected by the superior courts, in the exercise of their supervisory and corrective power, through the writ of *certiorari*. It is the peculiar province of the writ of *certiorari* to correct errors of law apparent upon admitted or established facts. 4 Ency. Pl. & Pr., 11. It has been held by this court that evidence may be heard in the circuit court in order to make manifest error of law committed by the inferior tribunal. *Robinson* v. *Mhoon,* 68 Miss., 712 (9 South. Rep., 887).

The remaining questions passed upon in this opinion, and upon which the decision turns, are common to both cases. They will therefore be considered and decided together. It is contended by appellants that the railroad commission was without power or authority to back classify these railroads under sec. 66, ch. 5, p. 23, Acts 1898, and classify them as railroads of the third class, and of the first, second, and third classes, respectively, claiming exemption from state supervision under maximum and minimum provisions in their charters. That without such classification the appellants were not liable for the

additional privilege tax of $10 per mile was expressly adjudicated by this court in *Gulf & Ship Island Railroad Co.* v. *Adams,* and *Yazoo & Mississippi Valley Railroad Company* v. *Adams,* 83 Miss., 306 (36 South. Rep., 144). It was also determined in those cases that the said railroads had not been classified as railroads of the first, second, and third class or narrow gauge, claiming exemption from supervision, and that because of the want of such classification they were not liable for the additional privilege tax of $10 per mile as railroads claiming exemption from supervision. The railroad commission, upon demand of the revenue agent, having, since the above decision was rendered, reclassified the said railroads and classified them as railroads of the third class, and of the first, second, and third classes, respectively, claiming exemption from state supervision, it becomes highly important to determine whether the railroad commission, having once classified said railroads under sec. 66, ch. 5, p. 23, Acts 1898, for the years for which the additional privilege tax is sought to be collected, could afterwards reclassify them for the said years and assign them to different classes than the ones to which they had previously been assigned. If the commission had authority to back-classify these railroads at all, the power must be found in some statute. If not found in sec. 66, ch. 5, p. 23, Acts 1898, or in ch. 34, p: 29, Acts 1894, which prescribe the duties and powers of the state revenue agent, it did not exist, as these are the only statutes from which the power could by any possibility be inferred. Section 66, ch. 5, p. 23, Acts 1898, is prospective, and prospective only. It provides that "the railroad commission shall annually, on or before the first Monday in August, classify the several railroads according to such charter exemption claims and the gross earnings of each," etc. The power therein given must be exercised annually on or before the first Monday in August. If not exercised by that date of any year, the power given by that section for that year must fail by the very terms of the statute.

It is contended for appellee, in a most ingenious and forceful argument, that all the power needed to enable the commission to make the back classification is to be inferred from the powers conferred upon the state revenue agent by ch. 34, p. 29, Acts 1894. It may be conceded that, if this statute empowers the state revenue agent to have railroads back classified for purpose of privilege taxation, it also empowers the railroad commission to make the back classification. *Railroad Company v. Adams*, 73 Miss., 661 (19 South. Rep., 91).

It therefore becomes necessary to analyze and construe ch. 34, p. 29, Acts 1894, in order to determine whether the power contended for is thereby given, either in express terms or by necessary implication. If given by this act at all, it must be found in either sec. 2, sec. 3, or sec. 4. It cannot be found in sec. 2. The purpose and entire scope of this section is to arm the revenue agent with power to sue for all moneys due the state, or any county, municipality, or levee board, for any cause whatever, and especially for all past due and unpaid taxes whatever. The right of the revenue agent to sue is not the thing controverted here, but the right of the railroad commission to do an act which is an indispensable prerequisite to a suit by him. The latter is not to be inferred from the mere giving in general terms to the revenue agent of the right to sue for all past due and unpaid taxes. The power to back classify railroads for privilege taxes is clearly not to be inferred from sec. 3 of the act, for that applies only to back assessments by the tax collector and the boards of supervisors of the several counties. If the power exists at all, it must be found in sec. 4, p. 30, which reads as follows: "If the property which the revenue agent discovers to have escaped taxation shall belong to any railroad or other corporation which, under the law, is required to be assessed by the state railroad assessors, the revenue agent shall give the notice required herein to said railroad assessors, and they shall give the required notice to the company or corporation. At their next meeting, after giving

the proper notice, said property shall be assessed in the same manner required by law and placed on the proper county, municipal, or levee board roll, and collected by the proper officers in the manner required by law, and the revenue agent shall have his compensation as in other cases." On its face this section applies to back assessment of property for *ad valorem* taxation, and cannot, unless it be by inference, be held to apply to back classification for imposition of privilege taxes.

It is contended for appellee that it is the evident purpose of the statute to make the powers of the railroad assessors for back assessment as extensive as the powers for back assessment conferred on the collectors and board of supervisors by sec. 3, and that the use of the words, "should the revenue agent discover that any person, corporation, property, business, occupation, or calling has escaped taxation by reason of not being assessed, it shall be his duty to give notice," etc., indicates that the power is given to the tax collector and board of supervisors to back assess or back classify for privilege taxes. We cannot adopt this construction. It is evident, notwithstanding the general terms employed—"person, corporation, property, business, occupation, or calling"—that this section has reference solely to *ad valorem* taxes on property. Certain of the terms employed are mere redundancies of expression, and are to be restricted by the manifest purpose of the section. The section cannot embrace ordinary privilege taxes, because they do not need to be assessed, and never are assessed, and because the work of classification for privilege taxes, except in the case of railroads, is always done by the legislature, and is never committed to the tax collector or board of supervisors. Back classification for ordinary privilege taxes is not necessary to enable the revenue agent to collect past due privilege taxes, for the reason that the right and authority of the revenue agent to sue for them is perfect without it. The use of the words "assessment," "property," "real estate," "personalty," negatives the idea that back classification for privilege taxes is contemplated in sec. 4. We

construe sec. 4 to mean what it appears on its face to mean.
We restrict it to back assessment of property for *ad valorem*
taxation, and hold that it gives no warrant for back classifica-
tion of railroads in order to an imposition of privilege taxes
for past years.

Appellee undertakes to escape the force of this reasoning by
contending that the franchise here sought to be taxed is prop-
erty; that a privilege tax is ultimately a tax upon the use of
the property, and is, in effect, a tax upon the property. We
do not concur in this, but hold that the tax sought to be collected
is a privilege tax proper. But if appellee's contention in this
regard were correct, and the tax sought to be collected were in-
deed essentially a property tax, still the commission would be
estopped now to back assess this franchise for a property tax.
It is a matter of which this court will take judicial notice that
these railroads were assessed for *ad valorem* taxation, for the
years 1898 to 1903, agreeably to provisions of Code 1892,
§ 3877, and that they have paid the taxes assessed against them.
It was by the statute made the duty of the railroad assessors,
in fixing the assessments of the said railroads, to take into con-
sideration the value of the franchise; and by the franchise,
in this connection, we understand the right of the railroad com-
panies to operate their railroads in the manner, on the condi-
tions, and with the powers prescribed and granted in their sev-
eral charters. They are conclusively presumed to have taken
the value of the franchise into consideration in fixing the assess-
ment of these railroads for the years in question, and this can-
not now be questioned in any tribunal. It is *res adjudicata.*
It has been expressly adjudicated by this court that, as to all
other matters (than exemptions) in the assessment and valua-
tion of the property of railroads, the judgment of the railroad
assessor is conclusive. *Railroad Company* v. *Adams,* 81 Miss.,
105 (32 South. Rep., 937). See also, specially, *Railroad Com-
pany* v. *Adams,* 77 Miss., at p. 778 (25 South. Rep., 355),
and note authorities there quoted.

But, of course, this doctrine is not to be extended to assessments procured to be made by fraud nor to assessments made in conscious and deliberate defiance of law. As to all such, whether the property withheld from or escaping assessment be franchise or other property, we adhere to and reaffirm the wholesome doctrine announced in *Revenue Agent* v. *Clarke,* 80 Miss., 134 (31 South. Rep., 216).

The franchise of these railroads having been assessed for *ad valorem* taxation (and for this, in the absence of fraud and the like, as indicated, we have a conclusive presumption of law), it is not now in the power of the railroad assessors to single out some constituent element of their franchise, or some mere incident thereto, and impose an *ad valorem* or property tax upon it. This would be double taxation and violative of the constitutional provision that taxation shall be equal and uniform. It would also, as has been suggested, violate the constitutional mandate that property shall be taxed according to its value, in this—to wit, that a property tax upon railroad franchises at the rate of $10 per mile, without regard to varying conditions, the volume of business, the earning capacity, or the value of the several roads upon which it is levied, would be a purely arbitrary tax, not equal and uniform and not according to value.

If the back tax now sought to be collected of the railroad companies which are appellants in the cases now being considered can be upheld at all, it must be upon the ground that they are privilege taxes in the ordinary acceptation of the term. We have already reached the conclusion that they cannot be allowed and collected, because no provision has been made by the legislature for the back classification of railroads with a view to the imposition and collection of privilege taxes for past years. But there is another insuperable objection to the back classification of the railroads and the collection of the additional privilege tax of $10 per mile for the years in question. The power conferred upon the railroad commission by sec. 66, ch.

5, p. 23, Acts 1898, to classify these railroads for privilege taxes, was exercised for each of the years from March 1, 1898, to March 1, 1903. It was the duty of the commission to classify them according to charter exemptions (from state supervision) and gross earnings. The commission classified them as railroads of the third class, and of the first, second, and third classes, respectively, saying nothing as to charter exemptions. This classification, in each case, was a judicial act. Everything was concluded by it which was comprehended or involved in it. It amounted to an adjudication that these roads were not liable for the years in question to the privilege tax of $10 per mile as railroads claiming exemption from state supervision. This judgment is final and conclusive, and cannot now be brought in question. *Railroad Company* v. *Adams,* 77 Miss., 778 (25 South. Rep., 355); *Railroad Company* v. *Adams,* 81 Miss., 105 (32 South. Rep., 937).

It is not necessary to the determination of these cases that we should pass upon the questions raised, and argued upon each side with such wealth of learning and cogency of reasoning, as to the application to these cases of the constitutional principles that the state shall not pass any law impairing the obligation of contracts nor deny to any person within its jurisdiction the equal protection of the laws.

*Reversed, and judgment here in each case for appellant.*

WHITFIELD, C. J., concurs in the result.