## WILLIAM H. DIKE *vs.* STATE OF MINNESOTA.

## April 30, 1888.

Constitution—Special Legislation—Adjustment of Claim against State.
Laws 1887, *c.* 158, entitled "An act providing for the judicial determination and adjustment of two alleged claims of W. H. Dike," is not in violation of the constitutional amendment of 1881, prohibiting the legislature from enacting any special or private law, "granting　*　*　* any special or exclusive privilege, immunity, or franchise whatever."

Appeal by defendant from a judgment of the district court for Ramsey county, where the action was tried by *Brill,* J.

*Moses E. Clapp,* Attorney General, and *H. W. Childs,* for appellant.

*Warner & Lawrence,* for respondent.

MITCHELL, J. The only question in this case is whether Laws 1887, *c.* 158, is in violation of the constitutional amendment of 1881, (Laws 1881, *c.* 3, § 1,) which prohibits the legislature from enacting any special or private laws, among other things, "for granting to any individual, association, or corporation, except municipal, any special or exclusive privilege, immunity, or franchise whatever." The contention on behalf of the state is that the act in question grants to plaintiff a "special privilege," because it gives him the right to appeal to the district court from the decision of the commission established by Laws 1881, Ex. Sess., *c.* 1, disallowing his claims; the same right not being given to others whose claims were disallowed by that commission. The title of the act, as well as the peculiar form in which it is cast, may at first sight seem to give an appearance of plausibility to this position. The act was evidently adroitly drawn, so as to win legislative favor; but, when stripped of all matters of mere dress, all there is of the act of substance is an appropriation of money out of the state treasury to pay the claims of plaintiff, or a percentage thereof, on condition that he established certain facts to the satisfaction of the district court. What is recited as having been done under the act of 1881 is unimportant, and that act itself cuts no figure, except so far as it is referred to to indicate what facts the

plaintiff must establish, and the district court find, in order to entitle plaintiff to draw the money from the state treasury. In short, the legislature, instead of investigating the facts themselves, and then appropriating the money absolutely, referred the investigation to the district court, and appropriated the money to pay the claims, conditioned upon the court's finding that they were of the character and description provided for in the fourth section of the act of 1881. Had the legislature adopted the first course, it seems to us that no one would have questioned the constitutionality of the act; but there is no difference in principle between that case and this. The appropriation of money to pay these claims, whether conditionally or unconditionally, and whether as a gift or in settlement of an obligation, moral or legal, was not the grant of a "privilege" within the meaning of the constitution. The language of the constitution was never intended to apply to such a case. If it did, the legislature could never appropriate money to pay a particular claim without passing a general law paying every other claim. The object of the constitutional amendment was to prohibit special or private legislation on certain subjects, which could be provided for by general laws. This is clearly indicated by the second section, which makes it the duty of the legislature to provide general laws for the transaction of any business that may be prohibited by section 1, which laws are to be uniform in their operation throughout the state. That the appropriation of moneys out of the state treasury could not be provided for by general laws is a proposition that requires no argument.

In construing the meaning of the word "privilege," as used in the constitution, the maxim, *noscitur a sociis*, is applicable. The prohibition is against granting special or exclusive "privileges, immunities, or franchises." The three terms are evidently all intended to refer to things of the same or similar general nature. An "immunity" has been defined as an exemption from any charge, duty, office, tax, or imposition; a "franchise" has been defined to be a particular privilege conferred by the sovereign power of the state, and vested in individuals; and while it is not necessary, and would be perhaps unwise, to attempt to give a complete definition of any of these terms, yet it is evident that the word "privilege," as used in this connection,

means, generally, a right or immunity granted to a person either against or beyond the course of the common or general law. The state's money is its own. It can give it or not, as it pleases. When it pays a debt or bestows a bounty, it always is for the special benefit of the recipient; but this is not the grant of a special privilege, within the meaning of the constitution. It may have been impolitic, by the passage of this act, to open the door for the revival of all the old claims of this kind which were disallowed by the commission under the act of 1881; but that was a matter exclusively for the consideration of the legislature.

We are satisfied that the act is not in conflict with the constitution. Judgment affirmed.