No. 11,050. .

| 44 | 1055 |
|----|----|
| 51 | 339 |
| 51 | 340 |
| 51 | 462 |

NEW ORLEANS CITY & LAKE RAILROAD COMPANY VS. CITY OF NEW ORLEANS ET ALS.

The earning capacity of the franchises of a New Orleans city railroad corporation is the true and statutory basis of their assessment for taxation.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Buck, Dinkelspiel & Hart* for Plaintiffs and Appellants.

*E. A. O'Sullivan*, City Attorney, *R. Lyons* and *Wynne Rogers* for Defendants and Appellees.

The opinion of the court was delivered by

WATKINS, J. This suit is to obtain a reduction of an assessment made for the year 1891, upon the *franchises* of plaintiff company,

that is to say, of its right to maintain and operate its street railways in the city of New Orleans.

The subjoined statement in plaintiff's brief puts the question for decision quite plainly, viz. (p. 3):

"The petition declares that an assessment of $650,000 placed upon said franchises for the purpose of taxation for the year 1891 is excessive; that it had without avail entered its protests both before the Board of Assessors and the 'Committee on Revision' of the City Council, all in full compliance with the requirements of law on which the right to contest the assessment, judicially, is based. It contends that it purchased said franchises to operate street railways for a period of twenty-five years from the city of New Orleans, as evidenced by a contract with said city, of October 2, 1879, for a cash price of $630,000 then and there paid; that said period of twenty-five years commenced to run on the 1st of January, 1880, and will expire on the 1st of January, 1906, and that therefore the correct value of said franchises for the unexpired fourteen years should be fourteen-twenty-fifths (14-25) of said original cost price, say $367,500."

And the further quotation from plaintiff's brief gives the theory on which the Board of Assessors proceeded in making the assessment very clearly.

*Vide* p. 5, to-wit:

"As the question involved is the valuation of the franchise, we can not, perhaps, place both the substance and the form of the controversy more clearly before your honors than by repeating the testimony of Mr. Renshaw, one of the assessors, showing the manner in which the valuation fixed by the Board of Assessors was ascertained.

"A. 'We therefore reached, from the returns, from the valuations of the several pieces of real estate, etc., $812,308, as the value of the tangible property of that railroad company. Now, the law of 1890 reads that the franchises shall be assessed at the earning capacity—*that the earning capacity* of the railroad shall be the basis of the assessment of the franchise, and arguing that 6 per cent. net, over and above all expenses, taxes, and so on, was a very fair return on the money; and as they had declared $90,000 a year dividend, and capitalizing that at 6 per cent., would have given a gross amount of $1,500,000; consequently, as the holdings in tangible shape only footed about

$800,000, the intangible must make up the difference to produce that much in dividends.

" 'Consequently, we put the assessment on the franchise in round figures at $650,000.' "

Thus it seems to be clear that the single question of law presented for decision is whether plaintiff's *franchises* should be valued, for purposes of their assessment, at their actual money value to the corporation, and proportionally to the length of time for their duration, according to plaintiff's theory, or at the earning capacity of plaintiff's railroad *quoad* the operation and use of said franchises, according to the theory of defendants.

This identical question was raised and decided adversely to plaintiff's contention recently in New Orleans & Carrollton Railroad Co. vs. City of New Orleans and Board of Assessors.

That opinion was predicated upon Secs. 28 and 29 of Act 106 of 1890, and its provisions are controlling.

We find no occasion to alter or modify the views therein expressed.

Judgment affirmed.