BLANCHARD, J.
This suit, ■ brought against the Board of Assessors for the Parish of Orleans, the Tax Collector of the District in which the Maestri market house is situated and the City of New Orleans, has for its object to procure the cancellation and erasure of the assessment made against the market by the Board of Assessors for the year 1901.
In the beginning of the year 1900 the Comptroller of the City of New Orleans published a notice that there would be sold at public auction to the highest bidder for cash, to be paid at the time of the adjudication, the privilege of erecting the market house in question, describing the structure so to be erected, and declaring the same was to be built in accordance with the terms, conditions and specifications contained in Ordinance No. 15,888, Council Series.
The first section of this ordinance directs the City Engineer to prepare plans and specifications for a public market house to be located in the Second District of the City within certain bounds which are given.
The second section directs that on approval by the Council of the plans and specifications, the comptroller shall advertise for sale for cash a franchise for building and operating the public market house referred to in the first section.
The third section requires that the successful bidder for the franchise shall erect the building, to-wit: — market house, on ground owned by him, the title to be good and sufficient and the property free from incumbrances, and that the market house is to be erected in accordance with the plans and specifications of the city’s engineer.
This section further provides that the market house, when erected, shall enjoy all the privileges granted to other public markets of the city and be subject to.all police regulations relative thereto. And the section declares that as a further consideration for the franchise to be granted, the adjudicatee shall transfer the said market house property, at once on its completion and before being opened for business, to the City by good and sufficient title — “the consideration for the transfer of said market house and lots,” declares the concluding clause of the ordinance, “being involved in and forming *520 part of the franchise granted by the City to the adjudicatee.”
The fourth section ordains that the person who acquires the franchise for building the market house shall have the privilege of collecting the revenues thereof at the rates heretofore fixed in the market ordinances of the Oity, especially Ordinance 4155, Council Series, and ordinances amendatory thereof, for the space and term of twenty-five years from the date of the transfer of the property to the City, and that after the expiration of the 25 years neither the adjudicatee, nor his heirs or assigns, are to have any interest whatsoever in or to the market house property — including ground and buildings.
The fifth section declares the market house shall be completed within six months from the date of the adjudication; that the City is at all times to have and exercise full police control of the same, etc.
The. sixth section prescribes that it shall be the duty of the adjudicatee to keep in good order and condition the market house, and grounds upon which it is situated, during the whole term of his franchise, and if he fail to make needed repairs the same is to be done by the City, and the latter is to be reimbursed the expense thereof by the collection from the 'market sufficient stall dues for the purpose.
The section further provides that at the expiration of this franchise the bouse and grounds shall be abandoned by the adjudicatee, his heirs or assigns, to the City authorities, in good order and condition, without formality or legal proceedings being required to be taken.
The seventh section declares that the property referred to shall be used for no other purpose than that of a public market house, and its conversion to any other use by the adjudicatee or those holding under him, or its abandonment of the same by him or them for more than thirty days at a time, shall operate the extinguishment of the franchise, and the Oity is, thereupon, to take, immediate possession and convert it to its own use entirely.
The eighth, ninth and tenth sections of the ordinance make directions, merely, concerning details of the adjudication, etc., to be made of the franchise offered for sale.
Under this ordinance C. N. Maestri became the adjudicatee for a cash consideration of the right to supply the necessary-ground and erect a market house thereon,, and to operate the same as a public market for 25 years, with full enjoyment of all the privileges granted to other public markets of the city, and subject to ail police regulations applicable to the said other public markets.
And he acquired by his said purchase the privilege of collecting the revenues of the market for 25 years at the rates then existing in the market ordinances of the Oity. This is the plain declaration of the fourth section of the ordinance. “At the rates heretofore fixed,” is the language of the section.
It is not true, then, as is the contention of the plaintiffs, that the Oity has retained the power to alter, reduce, or abolish the-rates or stall rents of this market, nor can it in anj1- way do anything to impair the-obligations it incurred to the adjudicatee in respect to the market.
There is here a contract whose obligations may not be impaired or affected to the detriment of the adjudicatee.
Nor is it true that it is the Oity that is operating these markets. It is the adjudicatees themselves who are operating them. True, under City surveillance and police authority, but nevertheless and in fact operating them. Nothing is clearer than this. The-thing sold was the right to build and operate-the market.
This is the plain, direct language of section 2 of the ordinance.
The City is not even in possession, actual or constructive, of the markets. True, the third section of the ordinance declares that as a consideration for the franchise to be granted the adjudicatee should, -on completion of the market house, convey the property to the City by good and sufficient title- and this was done, and the fee may be said to be conditionally in the City; but this conveyance to the City is not a sale because it lacks the essential of a certain and fixed price in current money. Civ. Code, art. 2439.
Nor has the dominion and full ownership-of the property vested in the City and it will not so vest until the expiration of the-25 year limit.
That the City was not intended to have pos *522 session is demonstrated by the plain language ■of the ordinance. Thus, the fourth section provides that after the expiration of the 25 year limit neither the adjudicatee, his heirs ■or assigns, are to have any interest whatsoever in and to the market ground and buildings. Common interpretation of this leads to the result that until the 25 years expires the adjudicatee retains an interest in the property.
And this is confirmed by the sixth section which declares that at the expiration of the franchise the house and grounds are to be abandoned by the adjudicatee, his hems or assigns, to the city — showing that until the franchise does expire, right, interest, possession in him continues.
It is further confirmed by the seventh section which prescribes that if the adjudicatee, •during .the 25 years, abandons the property for as much as 30 days at a time, or converts, or attempts to convert it to another use than that of public market, the City is authorized to take immediate possession and convert the property to its own use entirely.
The revenues to be collected by the adjudicatee do not constitute a fixed price in current money — to make this contract one ■of sale. '
Neither is it a dation en paiement, because under article 2655 of the Civil Code that species of contract requires that there should be a pre-existing debt for which the thing is given in payment. This was not the case here.
Nor is it a lease, because under Civ. Code, art. 2670, a price is essential in a lease. It is true that under Civ. Code, art. 2671, an exception is made to the general rule laid down in the preceding article', and it is provided that the lessee may pay as rent a certain portion of the fruits of the leased property in lieu of money. But that is not the case here, the contractors here paying no portion of the fruits of the property to the City.
“Without a price fixed by the parties, or left to the award of a third person named or determined, there can be no lease,” was the declaration of this Court in University Publishing Co. v. Piffet, 34 La. Ann. 602. See, also, Fisk v. Moores, 11 Rob. 279; Frigerio v. Stillman, 17 La. Ann. 23; Gleason v. Sheriff, 20 La. Ann. 268.
Neither is there a lease where the consideration for the occupancy of the house is the expectation of advantage to be derived by the lessor. University Pub. Co. v. Piffet, 34 La. Ann. 603.
Nor is the contract under consideration an antichresis, because, under article. 3176 of the Code, it is necessary in this species of contract that there should be a pre-existing debt, at the time the contract is entered into, for which the debtor surrenders the property to the creditor so that the-latter may eventually pay himself the debt out of the use and fruits of the property surrendered to him. And, besides, under the contract of antichresis the creditor is bound, unless the contrary be agreed on, to pay the taxes.
And the same is true of an usufructuary, if, by any possibility, the contract under discussion could be construed as establishing an usufruct.
Thus, even if the provisions of the Code were applicable to the contract, it is evident that while it (the contract) possesses some of the characteristics of certain of the contracts named in the Code, yet it is lacking in one or more of the essentials of each.
But are the Articles of the Code applicable? It is well settled that the Civil Code is only a State statute fixing the rights of the citizens inter sese — that is to say a private law (loi privé), and as such not fixing the rights of the government, the sovereign, in the exercise of its sovereign powers, such as taxation and the like. The relations between the State and the City — the latter in the exercise of its delegated powers — are governed by a higher law, the public law (loi publique).
An analysis, then, of the contract under consideration, and its reasonable interpretation, showing the same does not fall within the definition of any of the codal contracts mentioned, the question recurs what was it the plaintiff obtained from the City by the adjudication made to him under City Ordinance No. 15,SS8?
The ordinance itself best answers the question.
Its second section directs the comptroller to advertise the public sale of a franchise for building a market house and operating it as a public market.
' Its third section requires the successful bidder for the franchise to do such and such *524 things, hereinbefore enumerated; and the same section declares that as a further consideration for the franchise to be granted the adjudicatee shall do so and so (also hereinbefore set forth) and even a third time refers to the franchise granted by the City to the adjudicatee.
The fourth section refers to the person who acquires the franchise.
The sixth section requires the adjudicatee to keep in good condition the market house and ground during the whole term of his franchise, and further stipulates that at the expiration of this franchise the house and ground shall revert to the City, etc.
The seventh section, in declaring that the j property shall be used exclusively for a pub- | lie market, guards against its conversion to other purposes by adding that such conversion shall operate the extinguishment of the franchise.
We thus see that all through the ordinance the intention of the City was to confer a franchise, not to make a sale, or lease, or antichresis, or dation en paiement, or usufruct, and the City is here now in her answer and through her attorney telling the' Court that it was a public franchise, and that only, which she conferred on the plaintiff, and insisting that the same is taxable under the revenue laws, as are all other franchises granted by the City.
And in the notarial act signed by the Mayor of the City and by the plaintiff (which act is predicated upon and embodies in full the City Ordinance under discussion) the Mayor formally conveys to the plaintiff the franchise or privilege for the erection of the public marlcet in question, and the act declares that the sale and transfer of the franchise is made subject to the terms and conditions of the City ordinance.
Through all the acts and doings and utterances of the City officials and of the plaintiff leading up to the erection, establishment and operation of the market, what was granted by the City was thought of, knowu as, and declared to be a franchise only.
It was the exclusive privilege vested in the plaintiff' to furnish the ground, build thereon a structure suitable for a public market and then operate it as such for 25 years by renting stalls to those engaged in the market business, those who sell meat and fowls and fish and oysters and vegetables- and other things edible, and such other commodities as are usually vended in the public markets of the City of New Orleans, and to collect and appropriate to himself the revenues derived from the renting of the stalls, the rates of which rentals were to be and remain as fixed by the then ordinances-of the City relating to public markets.
And for this exclusive privilege, instead of money paid down (save as to the amount for which the franchise was adjudicated at public auction), or money paid in annual installments, the lots of ground themselves with the market house building, were to-accrue to the City in full ownership at the expiration of the period fixed for the duration of the privilege.
Until such expiration it is clear the owner of the privilege is entitled to hold the property, notwithstanding the nominal title was to be and was conveyed to the City.
“Ownership,” declares the Code (article-488), “is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.”
The City does not hold this property by any such tenure. It does not and will not belong to the City to the exclusion of the plaintiff until the 25 years shall have expired.
The title conveyed to the City is to be-viewed and construed in the light of the-City ordinance authorizing the sale of the franchise and stipulating the consideration the City was to receive therefor. The ordinance is referred to in the act of conveyance and it is stated that the mayor in accepting same for the City, does so in pursuance to-the City ordinances relating thereto.
The ordinance authorizing the franchise is, then, to be read into the act vesting title in the City, and the title itself has only such effect as is permitted it hy the terms of the ordinance.
As we have seen it is a conditional tenure by which the City may claim ownership.
If the adjudicatee of the franchise is maintained in his right to operate the market as a public market for 25 years and collect and enjoy the stall rents at rates fixed under City ordinances existing at the time of the adjudication, then the indefeasible title *526 to the property accrues to the City. Otherwise not.
This imports imperfect, not perfect ownership. “The ownership of a thing,” declares Civ. Code, art. 489, “is vested in him who has the immediate dominion of it, and not in him who has a mere beneficiary right in it.”
Perfect ownership only exists when the thing is unincumbered with any real right towards any other person than the owner. Civ. Code, art. 490. ;
Ownership is imperfect when it is to ter- ¡ mínate at a certain time, or on a condition, j or if the thing, which is the object of it, ; being an immovable, is charged with any ¡ real right towards a third person. Civ. 1 Code, art. 490.
Recurrence to these provisions of the law assists in interpreting the contract under consideration. They help to show that a franchise only was granted; that the adjudicatee has not yet invested the City with the ownership of the market house he built; that the City has not yet a market house to become the lessor of: that if the City is not the invested owner, it is clear the plaintiff holds the right to do as he is doing, to-wit: —-maintaining and conducting a public market, as the result of a special privilege granted to him for a consideration, part of which was paid in cash, represented by the amount of his bid, the other part to be received by the City in this way: the conducting of a public market in the City at a locality needing such market, on ground acquired and in a house built without expense to the City, which ground and house is to accrue to the City in full ownership after the lapse of 25 years.
The privilege to do this is a franchise under every definition from authoritative sources.
Thus both Bouvier and Black’s Law Dictionaries define a franchise to be “a special privilege conferred by government upon an individual and which does not belong to the citizens of the country generally, of common right.”
Mr. Black, continuing, says in England a franchise is defined to be a royal privilege in the hands of a subject.
Angel and Ames on Corporations give the same definition as Bouvier and Black. Kent calls “a certain privilege conferred by grant from government and vested in individuals” a franchise. Blackstone’s Commentaries defines it as “a royal privilege subsisting in the hands of a subject.”
Commenting on Blackstone’s definition, Thompson, in his work on Corporations, vol. 4, § 5335, says:—
“It has been well observed that, under our American system of government and laws, this definition is not strictly correct, since our franchises spring from contracts between the sovereign power and private citizens, made upon a valuable consideration, for purposes of public benefit as well as of individual advantage.”
To be a franchise the right possessed must be such as cannot be exercised without the express permission of the sovereign power— a privilege or immunity of a public nature which cannot be legally exercised without legislative grant. State v. Minnesota Thresher Mfg. Co., 40 Minn. 213; 41 N. W. 1020, 3 L. R. A. 510; Dike v. State, 38 Minn. 366, 38 N. W. 95.
If the exclusive right to conduct a ferry, supplying boats for the purpose and collecting tolls, the rates of which are fixed by the State or political subdivision making the grant, is a franchise, why is not the special, exclusive privilege of conducting or operating a public market in a certain locality, supplying the ground and house needful therefor and charging stall rentals fixed by the City of New Orleans, also a franchise?
No one can conduct a public market in New Orleans except by special privilege granted him by the City Council.
The plaintiff in this suit is operating a public market upon such special privilege granted, evidenced by a contract between the sovereign power and himself, made upon valuable consideration, for purpose of public benefit as well as individual advantage. This fulfills to the letter Thompson’s definition supra and meets the requirements of definitions of franchises laid down by all text writers and the courts everywhere.
In Ball v. City, 52 La. Ann. 1554, 1555, 28 South. 109, this Court recognized that the privilege of collecting the revenues of a market for a term of years was a franchise.
In Police Jury of Parish of Lafourche v. Thibodaux Bridge Co., 44 La. Ann. 137, 10 *528 South. 677, the Court declared, the exclusive privilege granted a corporation to collect tolls for a number of years on a bridge built under circumstances exactly similar to those under which these markets were built, was a franchise.
In Sellers v. Union Lumbering Co., 39 Wis. 527, it was declared that the right to collect tolls upon logs put in a river under legislative authority was a franchise. So, too, was the right to collect tolls on a road, granted by statute, declared to be a franchise. Truckee & T. Turnpike Road Co. v. Campbell, 44 Cal. 89. To the same effect were the holdings of the Court in Davis v. Mayor, etc., 14 N. Y. 523, 67 Am. Dec. 186; Blake v. Railroad Co., 19 Minn. 418 (Gil. 362), 18 Am. Rep. 345; Beekman v. Railroad Co., 3 Paige (N. Y.) 75, 22 Am. Dec. 679. The list of similar decisions could be extended indefinitely.
If the City of New Orleans were to grant to a street ear company the exclusive right to build and operate for 25 years a car line on a given street, charging such rates for the carriage of passengers as the City prescribed, under a contract which stipulated that the company was to pay down in cash so much money for the privilege extended, that it should as a further consideration at once on completion of the road convey formal title to the City to the same, including cars and equipment, with the right, however, reserved in the company to hold possession for 25 years and then relinquish all right, claim, interest and possession to the City, in what way would such a contract differ from the one under discussion?
There would be no difference.
Would not what the car company received in the way of grant of privileges from the City be a franchise? Would the fact that the City was to take the property itself and have and enjoy it at the end of the 25 years, instead of a moneyed consideration, make it any the less a franchise that was granted, i. e. a special privilege to build and operate the road and charge tolls therefor? We think not.
Street car franchises are taxable. Why not public market franchises? Both supply public wants.
The principles invoked and applied in that class of cases where the right to tax City bonds, notes, certificates of indebtedness, etc., was denied, are in no sense involved in-the case at bar, nor infringed by anything said, or held in this opinion.
Here the City of New Orleans owes the adjudicatee of the market franchise no indebtedness. The City’s only obligation is to maintain the market house he erected as a public market, and protect the adjudicatee, his heirs or assigns, in the right to collect and enjoy the revenues for 25 years.
Neither is it an attempt on part of the City to tax what is due to it by the adjudicatee. The latter owes the City no indebtedness. His only remaining obligation to the City is to maintain the market house as a public market, to keep the grounds and house in good order and repair and to relinquish and surrender same to the City at the end of the 25 years stipulated.
Franchises are taxable property. N. O. City Gaslight Co. v. Board of Assessors, 31 La. Ann. 476; Williams v. Broussard, 51 La. Ann. 335, 24 South. 808. No kind of property is exempt from taxation in Louisiana save that precisely enumerated in the fundamental law itself.
The accepted rule everywhere is that grantees of franchises receive the same from the sovereign subject to the State’s power of taxation, unless otherwise specially provided.
As well said by counsel representing the City of New Orleans:—
“Whenever a man accumulates property in open competition with his fellow man, the sovereign subjects the result of his toil, his property, to taxation. Why should it exempt property acquired by another individual as the result of his ownership (or administration) of an attribute of sovereignty — an attribute which he, and he alone, has the right to exercise?”
The contrary theory, that the purchase of a franchise from the sovereign exempts the franchise from taxation, has been exploded. The subject came up in this State in the Railroad cases reported in 40 La. Ann. 587, 4 South. 512, in 42 La. Ann. 4, 7 South. 59, 21 Am. St. Rep. 365, and in 44 La. Ann. 1055, 11 South. 820, where the right to tax was maintained — one of the cases, to-wit: — that in 40 La. Ann., and 4 South., going by writ of error to the Supreme Court of the United States, where the judgment of this Court was affirmed. 12 Sup. Ct. 406, 36 L. Ed. 121.
*530 The Revenue law of 1898 (Acts 1898, p. 347, No. 170) is the taxing statute now in force in the State of Louisiana. Under the term “property,” as therein used, subject to taxation, it gives a long list, and as coming within the definition of “property,” as objects of taxation, it specifically mentions “charters and franchises.”
Construing the privilege enjoyed by the plaintiff in this suit, of building a market house and operating same as a public market for a period of 25 years, and receiving the revenues therefrom, as a franchise within the meaning of the statute of 1898, the Board of Assessors placed an assessment upon the same, reaching a valuation thereof, for purposes of taxation, on the basis of the earning capacity.
For the reasons herein given their action is sustained, and it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed and that the demand of the plaintiff be rejected at his costs in both courts.
See dissenting opinion of BREAUX, J., 34 South. 663.