WIRT ADAMS, STATE REVENUE AGENT v. SAMUEL R. BULLOCK ET AL.

[47 South. 527.]

FRANCHISES. *Municipalities. Waterworks. Taxation. Mode of assessment.*

The grant by a city of the exclusive privilege of constructing and operating a waterworks plant therein, and to use the streets for the purpose:—

(*a*) Is a franchise;

(*b*) Is property;

(*c*) Is taxable as personalty; and

(*d*) Is not embraced in an assessment of "capital invested in merchandise and manufacturing."

FROM the circuit court of Warren county.

HON. J. N. BUSH, Judge.

Adams, state revenue agent, appellant, was plaintiff in the court below; Bullock and others, appellees, were defendants there. From a judgment in plaintiff's favor, but denying him a

large part of the recovery sought, he appealed to the supreme court. The facts are stated in the opinion of the court.

*Bryson & Dabney,* for appellant.

If the assessment of "Capital invested in merchandise and manufacturing" embraced the franchise in question then there is no error in the action of the court below, but if, on the other hand, it did not, the court below erred in holding that it did and the case must for that error be reversed and remanded.

We think that this case is controlled by the case of *Vicksburg Bank v. Adams,* 74 Miss. 179, 27 South. 401, in which it was held that "money on hand, on deposit or at interest" did not include or describe the capital stock of the bank and that the capital stock was therefore still assessable.

In this connection we desire further to call the attention of the court to the fact that by another agreement made with counsel for the Vicksburg Water Supply Company, being the only appellee interested up to the year 1901, both parties ask for an affirmance of the judgment below up to and including the year 1900, leaving only the back assessments for the years 1901, 1902, 1903, 1904 and 1905 to be adjudicated.

*McLaurin, Armistead & Brien,* for appellees.

The court will take judicial knowledge of the form of the printed list to be furnished tax-payers, as set out in Code 1892, § 3761, and the court will notice that nowhere in this itemized list furnished tax-payers is there any detailed statement of how the assessment of the capital stock of a joint stock company, such as appellees, shall be detailed in this printed list, as provided for by Code 1892, § 3758.

It is averred in this record and also held by the court below that where the appellees had listed their property as such joint stock company, as provided by Code 1892, § 3758, and the assessor had put it upon the tax roll of the county under some heading mentioned in Code 1892, § 3761, such as "capital employed in merchandise and manufacturing" or "capital employed

in business" and such assessment is paid on by the tax-payer, as is not denied in this record, certainly this property has not escaped taxation so as to bring it within the power of the revenue agent to list it again for taxation on the ground that it was not properly enumerated on the tax roll after having been properly given in to the assessor. *Adams v. Luce,* 87 Miss. 220, 39 South. 418.

It is not denied in this record that these appellees have paid to the state and to the county of Warren taxes on the capital stock they have employed in these joint stock companies and that they have listed it properly to the assessor and that the state and county have received the taxes due from these tax-payers, as provided by law; and yet, it is seriously insisted by the attorneys for appellant, that notwithstanding the facts shown above, the tax-payer can be again shorn by the strong arm of the state and made to pay a double tax by going into what constitutes the "market value" of the capital stock of a "joint stock company or corporation" as provided by Code 1892, § 3758, and reassess the franchise, earnings, profits and capital employed, notwithstanding the tax-payer has paid on the capital stock of which these items make the market value.

The court below very properly held that this could not be done; that these items very necessarily constituted the market value of the capital stock of a joint stock company or corporation and that when such corporation had paid on the market value of its capital stock, it necessarily included the franchise and the franchise could not be again assessed for taxation. The fact that the assessor listed the capital stock as "capital employed in business" and that the taxes were paid on it in this form certainly would not be made a means of punishing the tax-payer by double taxation; and that is what is sought to be done in this case.

Under the rule announced by this court in *State v. Simmons,* 70 Miss. 485, 12 South. 477, and *Bank of Oxford v. Town of Oxford,* 70 Miss. 504, 12 South. 203, the action of the court below in this case was entirely correct.

Mayes, J., delivered the opinion of the court.

In 1886 the mayor and board of aldermen of the city of Vicksburg granted to Samuel R. Bullock & Co., their associates, successors, and assigns, the exclusive right and privilege of erecting, maintaining, and operating a system of waterworks in the corporate limits of the city of Vicksburg, and to effectuate this grant also gave them the exclusive right to use the streets, alleys, public squares, and all other public places in the city limits as they existed or might afterward be extended. This privilege was shortly thereafter transferred to the Vicksburg Water Supply Company, and in 1900 by it transferred to the Vicksburg Waterworks Company, and the Vicksburg Waterworks Company transferred it to the City Waterworks & Light Company about the year 1903.

On June 4, 1906, the revenue agent began a proceeding before the board of supervisors, through Robert B. Hall, tax assessor of Warren county, the object of which was to assess for taxation for the county and state the franchise granted by the city of Vicksburg to the said Samuel R. Bullock & Co., their successors, etc., from the years beginning with 1887 to 1905, inclusive, claiming that said franchise had escaped taxation.

There were numerous exceptions filed to the assessment returned to the board of supervisors by the tax assessor, finally resulting in the board sustaining the assessment of the franchise on the ground that it had escaped taxation for the several years named in the assessment of same; and, after modifying the value placed on same by the tax assessor, the board ordered that the franchise be placed on the rolls for taxation. From this order of the board of supervisors an appeal was prosecuted to the circuit court by all the parties against whom the assessment had been made, and the cause was heard on the different pleadings filed by the waterworks company and the revenue agent.

We do not deem it necessary to set out in detail the numerous exceptions, demurrers, pleas, etc., which were filed in this cause, since by agreement of counsel the question in this case is reduced

to a very narrow limit. It is agreed that the value of the fran-chise for the years 1887 to 1905, inclusive, is $5,000 for each of said years, except for the year 1887, and for that year it is agreed that the franchise had no value. On the hearing the parties waived a jury, and submitted the issues involved to the court. The judgment of the court was that the Vicksburg Water Supply Company was liable for taxes on its franchise at the agreed valuation of $5,000 for the years 1888, 1889, 1890, and 1891, only, and further holding that for each of the years 1892 to 1905, inclusive, the assessment given in as "capital em-ployed in business" and "capital invested in merchandise and manufacturing" included the franchise, and it was therefore not assessable, and should be stricken from the rolls. It having been agreed that the franchise was valueless for the year 1887, the court ordered the assessment for that year stricken out.

An agreement filed in the record shows that an adjustment has been reached of all differences involved in this litigation prior to the year 1901, and this appeal is prosecuted by the rev-enue agent from that part of the judgment of the court holding that the franchise is not liable to taxation for the years 1901 to 1905, inclusive. The only question involved now is whether the franchise is now liable to taxation as having escaped taxation for the years 1901, 1902, 1903, 1904 and 1905. The agreed assess-ment rolls of Warren county show that the Vicksburg Water-works Company was assessed on the personal rolls for state and county taxes for the years named above as follows: For the year 1901, 1902, and 1903 the assessment was for "capital invested in merchandising and manufacturing." This is the only assess-ment of any kind of property to the Vicksburg Waterworks Com-pany on the rolls of the county. After 1903 the property had been sold to the City Water Works and Light Company, and on the personal rolls the City Waterworks & Light Company is as-sessed for the two remaining years—that is, for 1904 and 1905—with "capital invested in merchandise and manufactur-ing."

The real question presented for decision is: Where property is listed for taxation under the description of "capital invested in merchandise and manufacturing," can it be said that the value of the franchise is included? There can be no doubt but that the grant of the exclusive privilege to construct a waterworks plant in the city of Vicksburg and the right to use the streets for this purpose is the grant of a franchise within the narrowest definition of the word. It is the grant of a valuable right, constitutes property, and is taxable. It is distinct in its nature from any sort of property which may be described for purposes of taxation as "capital invested in merchandise and manufacturing" and is not included within such description any more than if the omitted property were horses or other property of like character. Section 178 of the constitution of 1890, contemplates the assessment for taxation of corporate franchises. This franchise is the property of a private corporation organized for pecuniary gain, and under section 181 of the constitution is taxable in the same way, and to the same extent as if owned by an individual. In a certain sense this franchise is capital, but for purposes of taxation it is not "capital invested in merchandise and manufacturing" because it is salable, and therefore valuable to the party owning same, though not a dollar of capital be invested in its operation. If owned by an individual, this franchise would be taxable as property not comprehended under the list as "capital invested in merchandise and manufacturing." Therefore, since under section 181 of the constitution corporations of this class are to be taxed as individuals, the franchise being owned by a corporation is none the less liable. That this exclusive privilege is a franchise, and that a franchise is property and taxable, is settled by section 178 of our constitution, and seems to be settled by the almost unanimous decision of all courts, but the courts are wanting in harmony in their decisions as to what character of property it is; that is to say, whether real or personal. See notes to case of *Louisville Tobacco Warehouse Co. v. Commonwealth of Kentucky*, 106 Ky.

165, 49 S. W. 1069, 57 L. R. A. 33. We adopt the view of such courts as hold that a franchise of this character is personal property and taxable as such. The capital stock of the companies was never assessed in the county and state, but it was assessed in the municipality for the years of 1904 and 1905, but the listing of the capital stock would not relieve the water companies from the necessity of listing the franchise for taxation as personal property. The capital stock has its taxable value, and the franchise, being personal property of a distinct kind, has a taxable value of its own. In the case of *Panola County v. Carrier & Son,* 89 Miss. 277, 42 South. 347, it is clearly shown how corporations of this character should be taxed. In the case of *Maestri v. Board of Assessors,* 110 La. 517, 34 South. 658, the city of New Orleans granted to Maestri the exclusive privilege to build a public market house on certain ground to be furnished by the city, and to operate it as such for twenty-five years by renting stalls to those engaged in the market business, and to collect and appropriate to himself the rent and revenue derived from the stalls. At the time the building was erected, the ordinance making the grant provided that Maestri would convey to the city at the beginning of his lease the ground and the market house thereon, and at the expiration of the twenty-five years, the full ownership of same should be in the city. Afterwards the board of assessors undertook to assess this franchise for taxation, and the court held that this privilege was a franchise, a valuable grant, and as such constituted property and was liable to taxation. In this case there will be found many cases cited, all to the effect that the grant by the sovereign power of any exclusive valuable right is a franchise and taxable property, whether it be in form of a contract or some other manner of giving the right. The case of *Mayor and Board of Aldermen of the City of Vicksburg v. Vicksburg Waterworks Company,* 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, involved a very different question from the one presented in this case, and the decision there in no way

affected the contentions in the case now before this court. In the case just cited the controversy arose over an attempt by the city to place a competitive waterworks system owned by itself in the city of Vicksburg after granting the exclusive right to maintain a waterworks system to the waterworks company, and the court held that the city could not do it. That was the only question involved in that case. There was involved in the case just cited no question of the right to tax that exclusive privilege. The fact that the court there held that the city was precluded by its contract from establishing its own system in competition with the waterworks company is proof conclusive that the grant is a valuable franchise. The question of the power of the municipality to exempt from taxation the value of the plant in excess of $50,000 for the period of time during which the contract is to run is not directly involved in this case, and we decline to pass on this contention at this time.

It appearing from the agreement filed that all matters in dispute are adjusted up to the year 1901, what we say in this case has no application to any period of time prior to the year 1901, but the judgment of the court below must be reversed and the case remanded, and the franchise held to be liable for taxes for the years 1901, 1902, 1903, 1904, and 1905.

*Reversed and remanded.*