TECHE LINES, INC., *v.* BOARD OF SUPERVISORS OF FORREST COUNTY.

(Division B. May 23, 1932. Suggestion of Error Sustained Oct. 10, 1932.)

[142 So. 24. No. 30064.]

(Division B.   Oct. 10, 1932.)

[144 So. 486.   No. 30064.]

For former opinion, see 142 So. 24.

**T. J. Wills**, of Hattiesburg, and **J. M. Stevens**, of Jackson, for appellant.

Watkins, Watkins & Eager, of Jackson, for appellee.

602

Argued orally by **T. J. Wills** and **J. Morgan Stevens**, for appellant, and by **W. H. Watkins, Sr.**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

This is an appeal from a judgment in the circuit court of Forrest county affirming an order of the board of supervisors of that county back-assessing appellant for taxes for the year 1930 on its right or franchise to do business in the county.

On July 24, 1931, the state tax collector gave notice in writing to the tax assessor of Forrest county to back-assess appellant for taxes for the years 1928, 1929, and 1930 on the value of its franchise, giving it a right to operate a bus line for the transportation of passengers over Highway No. 11, through said county, a distance of thirteen miles, at one thousand dollars per mile, aggregating thirteen thousand dollars for each of said years, totaling thirty-nine thousand dollars. The assessor, in pursuance of the notice, made the assessment on the personal roll by way of additional assessment and filed the same with the board of supervisors, and gave notice that objections to the assessment would be heard at the September, 1931, meeting of the board. The appellant, through its attorneys, filed written objections to the assessment. The board of supervisors entered an order eliminating the assessments for the years 1928 and 1929 and confirming the assessment for the year 1930, fixing the value of the franchise for the thirteen miles through Forrest county at four hundred dollars per mile, making

a total valuation of five thousand, two hundred dollars. From that order of the board appellant appealed to the circuit court, where a judgment was entered affirming the order of the board of supervisors, from which judgment the appellant prosecutes this appeal.

A jury was waived and the trial took place in the circuit court before the judge. The facts upon which the case was tried are embodied in the order of the board of supervisors approving the assessment, and an agreement between the attorneys representing the respective parties, which, leaving off their formal parts, follow in the order stated:

"This day this cause came on to be heard on the application of W. J. Miller, State Tax Collector, for the confirmation of additional assessment made against the Teche Lines, Inc., by E. V. Ford, Assessor, in pursuance of notice and at the instance of the State Tax Collector, dated July 24, 1931, and upon the objections and exceptions of the Teche Lines, Inc., thereto, which objections are in writing and on file with the clerk of the board. It appearing to the board and the board finds:

"1. That for the entire year 1930, the Teche Lines, Inc., owned and operated a passenger bus line, under a certificate of public convenience and necessity granted to it by the Mississippi Railroad Commission, under and by virtue of chapter 128, section 6, Laws of 1926, being section 7120, Mississippi Code of 1930, regulating and providing for the licensing of motor transportation companies, operating for hire upon the highways of Mississippi, and that under said certificate or franchise the said Teche Lines, Inc., engaged in the business of carrying persons for hire over and along Highway No. 11 from the Alabama line of Lauderdale County, Mississippi to the Louisiana line of Pearl River County, Mississippi, thirteen miles of which extended through Forrest County over said Highway No. 11;

"2. That the said Teche Lines, Inc., did not own said

certificate or franchise during the year 1928 or the year 1929 or operate the same, but only for the year 1930; that the said Teche Lines, Inc., was domiciled in the State of Louisiana, and owned no property in Forrest County other than said certificate or franchise, and the Hotel Hattiesburg the lessor of its depot in Forrest County paid all ad valorem taxes on said depot or station, and made no kind of return for ad valorem taxation of and for its said certificate or franchise or upon any physical property for the year 1930 in the state of Mississippi, although it paid all highway privilege taxes required of it under and by virtue of chapter 230, Laws of 1928, being article 3, chapter 138, Code 1930 (section 5602 et seq.), and that Highway No. 11 is one of the highways receiving Federal Aid under the Federal Highway Act (23 USCA, secs. 1-25);

"3. It further appearing to the board, that throughout the entire year 1930, the said Teche Lines, Inc., operated under said certificate of public convenience and necessity in both interstate and intra-state commerce carrying passengers, baggage and light express, but no freight, from Birmingham, Alabama, on the north to New Orleans, Louisiana on the south, through said Forrest County, and that it had and maintained a depot and place of business in Hattiesburg, Forrest County, Mississippi, in charge of its agent, where tickets for transportation over said line were sold, and where its motor transportation busses stopped on regular schedules for letting out and picking up passengers; that it had one or more additional stops in Forrest County, Mississippi.

"4. It appearing to the board that during the entire year of 1930, from evidence introduced before it, said right and franchise throughout the year 1930 was of the value in excess of five thousand, two hundred dollars, being for thirteen miles in Forrest County, Mississippi,

at four hundred dollars per mile, to be apportioned by tax collector of said county.

"5. It further appearing to the board that the Teche Lines, Inc., is and was a foreign corporation, organized under the laws of the State of Louisiana, where it maintains its domicile and principal place of business; that it was duly permitted, however, throughout the entire year of 1930 to do business in the State of Mississippi, and to exercise said franchise, which extended from the Alabama line in Lauderdale County, Mississippi, to the Louisiana line in Pearl River County, Mississippi; that it appointed as its agent for service of process, as required by the statutes of the State of Mississippi, Carl Marshall of Bay St. Louis, Mississippi. It is, therefore, ordered and adjudged:

"(a) That the additional assessment made by E. V. Ford, Assessor, at the instance and request of W. J. Miller, State Tax Collector, as of July 24, 1931, be and is hereby ratified and confirmed for the year 1930 for a distance of thirteen miles over and along Highway No. 11 Forrest County, Mississippi, at a valuation of four hundred dollars per mile.

"(b) And that in all other respects said assessment be and is hereby disallowed, revoked and set aside."

"It is agreed by and between the attorneys representing the plaintiff and the defendant in the above entitled cause, that for the purposes of this trial and no other, and to save the cost and expense of producing testimony, that W. J. Miller, State Tax Collector has introduced competent evidence to prove the facts set out in the order made by the Board of Supervisors of Forrest County, appealed from in this case, affirming the additional assessment made by the tax assessor of Forrest County for the plaintiff, and that for the purposes of this trial, the Teche Lines, Inc., declines to introduce any testimony to contradict the facts so set out in said order, but relies

upon its objections and exceptions to said facts on account of the incompetency, irrelevancy, and immateriality thereof, and reserves the right to argue the same as to any matters of law or the insufficiency of said facts to support the order appealed from. It is expressly understood that this agreement is without prejudice to the rights of the Teche Lines, Inc., in any other proceeding now pending in other counties, or in any other cause whatsoever.''

Appellant's objections, eliminating those for the years 1928 and 1929, which are not involved, are substantially as follows: (1) The certificate of public convenience and necessity issued by the railroad commission to appellant to operate a bus line as a common carrier of passengers through this state, including Forrest County, was granted to appellant as a foreign corporation having no domicile or principal place of business in this state, and is a mere license or certificate under section 7120 of the Code of 1930, and has no situs for taxation in Forrest county, therefore the tax assessor of that county was without jurisdiction to make the assessment. (2) Under section 3136 of the Code of 1930 such certificate of public convenience and necessity issued to appellant, if property at all, is an intangible right owned by appellant, a foreign corporation, and under the laws of this state is exempt from taxation. (3) The assessment fixed at one thousand dollars a mile is an arbitrary and fictitious valuation. (4) The certificate of public convenience and necessity, if taxable at all, has its situs for taxation in Louisiana where the appellant is incorporated and has its principal place of business, and this is true, especially since appellant has no principal place of business in this state, but is engaged in both interstate and intrastate business operating a bus line from New Orleans, Louisiana, through the state of Mississippi on Highway No. 11, to Birmingham, Alabama. (5) The certificate of convenience and necessity assessed is a

single unit for the operation of a bus line through Mississippi from New Orleans in the state of Louisiana to Birmingham in Alabama, and is not divisible by counties; and in the county of Forrest appellant has no office or place of business or tangible property subject to taxation. Appellant has no proprietary rights in Highway No. 11, but is merely exercising a license granted by the railroad commission of this state to operate a bus line over the entire highway, and this is not such property as is taxable because the right could not be sold under a tax warrant. (6) The taxation of appellant's franchise would be a burden on interstate commerce, and therefore violative of article 1, section 8, sub-section 3 of the Federal Constitution, and likewise of the Federal Highway Act (section 9 [23 USCA, sec. 9]), expressly providing that all highway construction or reconstruction under its provisions shall be free from tolls of any kind, and the assessment involved would be tantamount to a toll.

We have reached the conclusion that the judgment ought to be affirmed. The circuit judge gave an opinion in writing in which he set out the grounds upon which he based the judgment. This opinion was made a part of the record. We think it clear, well reasoned, and sound, and that we could not do better than adopt it as the opinion of this court. Leaving off the statement of facts of the case, which have already been set out above, the opinion follows:

Though not designated as a franchise, does the certificate of public convenience and necessity possess the elements of a franchise? Is it property? And if so, how shall it be classed? In 57 L. R. A. (notes) par. 4, page 35. the author groups definitions from leading authorities. Typical of these definitions is one quoted from Taney. Ch. J., taken from the case of Bank of Augusta v. Earle. 13 Pet. 519, 10 L. Ed. 274: ''Franchises are special privileges conferred by government

upon individuals, and which do not belong to the citizens of the country, generally, of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country, no franchise can be held, which is not derived from a law of the state."

In Maestri v. Board of Assessors, 110 La. 526, 34 So. 658, 661, it is said: "To be a franchise the right possessed must be such as cannot be exercised without the express permission of the sovereign power—a privilege or immunity of a public nature which cannot be legally exercised without legislative grant. State v. Minnesota Thresher Mfg. Co., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; Dike v. State, 38 Minn. 366, 38 N. W. 95."

According to Cooley on Taxation, vol. 2, par. 827, franchises may be divided into three classes: (1) The franchise "to be." This is necessarily the corporate or creative franchise. It is a privilege granted by the sovereign to individuals to act as one, with legal individuality. (2) The franchise "to do." Included under this class is the privilege, after organization, to perform certain acts or business. It is really a "combination of independent Franchises embracing all things which the corporation is given power to do." (3) "Special franchises have been well defined as the right accorded to a certain corporation to possess privileges not enjoyed by corporations in general." This class is illustrated, says the author, by "the privilege to use public highways," designated as street franchises.

Our court, in Gulf Refining Co. et al. v. Cleveland Trust Co. et al., 108 So. 158, 160, has followed the line of authorities that divide franchises into two classes, viz.: (1) Corporate or general franchises, and (2) special or secondary franchises. "The former is the franchise to exist as a corporation, while the latter are certain rights and privileges conferred upon existing corporations, such as the right to use the streets of a municipality to

lay pipes or tracks, erect poles or string wires." The case further holds that secondary or special franchises may be sold or mortgaged under the general power of disposal of property granted to corporations, and under our statutes such special franchises are liable to be seized and sold in satisfaction of judgments.

In Adams v. Bullock, 94 Miss. 27, 47 So. 527, 19 Ann. Cas. 165, the court was dealing with a special franchise to operate a waterworks plant in the city of Vicksburg and to use the streets. The court held that such privilege is a franchise and is personal property.

Tested by these principles of law, I must conclude that the defendant was granted a substantial right—a franchise—a right to use one of the state's main highways, built at public expense, for carrying on its business.

Sections 6 and 7 of the act (now Code 1930, secs. 7120, 7121) granting the franchise are adequate to protect defendant against unreasonable competition. Section 9 of the act (now Code 1930, sec. 7123) confers the right on defendant to sell, assign, lease, or transfer the privilege, "as other property," by authorization of the commission. This right or franchise exists by sanction of the state and receives protection under the laws of the state. It is a property that may be figured as an item of value in the inventory of assets in earning dividends, or as collateral for loans. It is therefore property, and under Adams v. Bullock, supra, must be declared to be personal property.

Section 112 of our Constitution requires all property to be assessed at its true value. Section 178 of the Constitution contemplates the assessment for taxation of corporate franchises. Section 181 of the Constitution requires property of corporations for pecuniary gain to be assessed the same as individuals.

It is contended, however, that if this franchise be construed as property, it is nevertheless intangible, owned

by a nonresident, and exempt from taxation under section 3136, Code of 1930. This section provides a plan for assessing (a) domestic corporations, (b) nonresident corporations, and (c) for exempting shares or certificates of stock in corporations when owned by individuals. As to both resident and nonresident corporations, the same basis of assessment applies, and which shall be the same as individuals. And likewise each of the three classes, resident corporations, nonresident corporations, and individuals, should enjoy the same exemptions. In other words, if any of the intangible property mentioned in the statute is exempt when owned by an individual. it (such intangible property) shall be exempt if owned by a corporation, whether resident or nonresident. To adopt defendant's view would exempt all intangibles if owned by a nonresident corporation, but would not necessarily exempt such intangibles if owned by a resident corporation, thereby placing a nonresident corporation in a favored class. Surely such discrimination was not the legislative intent. A claim of exemption from taxation should never be enlarged by construction. It is presumed the state granted all it intended to grant. Adams County v. National Box Co., 125 Miss. 598, 88 So. 168. Statutes granting exemptions from taxes must be strictly construed against the claimed exemption. New Standard Club v. McGowen, 111 Miss. 92, 71 So. 289, Ann. Cas. 1918E, 274.

It is urged that defendant's domicile being in Louisiana, this would be the situs for taxation for all its intangible property, under the common-law maxim, "mobilia sequuntur personam."

In Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 S. Ct. 305, 41 L. Ed. 683, it appears that the express company was operating under a franchise granted by the state of Ohio, though the corporation had its domicile in the state of New York. The state of Ohio assessed for taxation the franchise for operating in that

state. The express company applied for rehearing on an adverse decision, and in 166 U. S. 185, 17 S. Ct. 604, 607, 41 L. Ed. 965, Mr. Justice BREWER, writing for the court, said: ''Where is the situs of this intangible property? Is it simply where its home office is, where is found the central directing thought which controls the workings of the great machine, or in the state which gave it its corporate franchise; or is that intangible property distributed wherever its tangible property is located and its work is done?'' Clearly, as we think, the latter. And again: ''It may be true that the principal office of the corporation is in New York, and that for certain purposes the maxim of the common law was, 'Mobilia personam sequuntur;' but that maxim was never of universal application, and seldom interfered with the right of taxation.'' I quote the closing paragraph of the opinion: ''In conclusion, let us say that this is eminently a practical age; that courts must recognize things as they are, and as possessing a value which is accorded to them in the markets of the world; and that no fine-spun theories about situs should interfere to enable these large corporations, whose business is carried on through many states, to escape from bearing in each state such burden of taxation as a fair distribution of the actual value of their property among those states requires.''

Defendant's franchise is a grant by the state. It was for the purpose of carrying on business wholly within the state. The sovereign power of the state extends over all territory within the state, and under its sovereign power to tax, it may lawfully tax all property within the state. Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897.

For the purposes of taxation, personal property may be separated from its owner, and may be taxed, on its account, at the place where it is, although not the place of the owner's domicile. Pullman's Palace Car Co. v.

Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613; State Railroad Tax Cases, 92 U. S. 603, 23 L. Ed. 663. See, also, note of 7 Ann. Cas. 519.

It seems to be the generally accepted rule that grantees of franchises receive the same from the sovereign subject to the state's power of taxation unless otherwise specially provided. Maestri v. Board of Assessors, 110 La. 517, 34 So. 658.

Assessment of this franchise, in the absence of a statute authorizing it, is challenged. State ex rel. Knox v. Union Tank Car Co., 151 Miss. 797, 119 So. 310, is cited in support of this contention. Quite a different class of property was there under consideration. The tank cars were movable, never at rest in any one county, so that a taxing situs could be ascertained. One day they might be in one county, and the next day in another; then, too, the number of the cars was unknown. Under these facts the court held that a statute applicable to that class of property was necessary. Here we have a species of property whose situs is localized or fixed within the state. It is immovable. Its rights are exercised in several counties through which the bus line operates, one of which is in Forrest county. Its mileage there is fixed. Its value per mile in Forrest county is established by testimony as shown by the agreed statement of facts. The difficulty of collecting the tax does not affect the power of the state to tax. Section 112 of the Constitution is inclusive of all property within the state. Many classes of property that have come into use were unknown when section 112 was adopted. Automobiles, airplanes, airports, garages, etc., were certainly not in the minds of the Constitution makers, yet no one would contend a statute is needed to tax them. Section 112 wisely provides that all property shall be assessed at its true value. It is made the statutory duty of the assessor to assess all property, failing in which, it is the province of the state tax collector to order it assessed.

Defendant also insists that prior to the enactment of the motor statute authorizing the franchise here in question, it had the right to use the highways without interference, subject only to the law of the road, etc., and that the state is powerless to restrict or interfere with interstate commerce over the highways. If defendant's busses were engaged solely in transportation of interstate commerce over the highways, unquestionably this position would be sound, and supported by authorities. Michigan Public Utilities Co. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627.

Until the state elected to exercise its sovereign power by regulating busses engaged in intrastate business, such busses of course could make common use with the public of the highways. But chapter 128, Laws 1926 (now Code 1930, section 7115 et seq.), is an expression of the will and power of the state. By this statute it effectually says to the bus lines, "Here are our highways, built at enormous public expense:—you may use them for carrying on your business, convert them, in part, into a means of enriching your treasuries. The protecting police power of the state is at your disposal. You will be protected from unreasonable competition." The sovereign grant vouchsafing these special privileges in the "certificate of convenience"—the franchise.

Merely because defendant's busses are engaged in both intrastate and interstate business does not deprive the state of the right to tax the franchise conferring authority to operate in intrastate transportation. It is not a tax on interstate commerce. As said by the United States Supreme Court in Adams Express Co. v. Ohio State Auditor, supra: "Again and again has this court affirmed the proposition that no state can interfere with interstate commerce through the imposition

of a tax, by whatever name called, which is in effect a tax for the privilege of transacting such commerce; and it has as often affirmed that such restriction upon the power of the state to interfere with interstate commerce does not in the least degree abridge the right of a state to tax at their full value all the instrumentalities used for such commerce.''

Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 878, 35 L. Ed. 613. In the last case cited the court said: ''It is equally well stated that there is nothing in the constitution or laws of the United States which prevents a state from taxing personal property employed in interstate or foreign commerce like other personal property within its jurisdiction. Delaware Railroad Tax (85 U. S.), 18 Wall. 206, 232 (21 L. Ed. 888, 896); Western U. Teleg. Co. v. Texas, 105 U. S. 460, 464 (26 L. Ed. 1067, 1068); Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 206, 211, 5 S. Ct. 826 (29 L. Ed. 158, 163, 164); Western Union Teleg. Co. v. Massachusetts, 125 U. S. 530, 549, 8 S. Ct. 961 (31 L. Ed. 790, 793); Marye v. Baltimore & O. R. Co., 127 U. S. 117, 124, 8 S. Ct. 1037 (32 L. Ed. 94, 96); Leloup v. Port of Mobile, 127 U. S. 640, 649, 8 S. Ct. 1380, 1383 (32 L. Ed. 311, 314).'' N. O., N. M. & C. R. R. Co. v. State, 110 Miss. 290, 70 So. 355.

Defendant's asserted right to relief from taxation because the highway was built at the joint cost of both the state and United States, and hence is designated as a federal-state highway, is denied in Alward v. Johnson, Treas., 282 U. S. 509, 51 S. Ct. 273, 75 L. Ed. 496, 75 A. L. R. 9.

Lastly, it is contended that the franchise or certificate does not grant to defendant the exclusive right to operate its business over said highway; that this is the controlling question determining value. On this point I quote from a case note in 57 L. R. A. 36: ''The right granted by public authority to a domestic corporation formed for

the purpose of establishing and maintaining booms in navigable streams made public highways, and of collecting tolls for logs and timber boomed, is a privilege or franchise, and is taxable as such, although it is not exclusive, and is open and common to every person and corporation to acquire under the same authority. Chehalis Boom Co. v. Chehalis County, 24 Wash. 135, 63 P. 1123, following Commercial Electric Light & P. Co. v. Judson, 21 Wash. 49, 56 P. 829 (57 L. R. A. 78); and Edison Electric Illum. Co. v. Spokane County, 22 Wash. 168, 60 P. 132.''

See, also, Opinion of Justices of New Hampshire reported in 84 N. H. 557, 559, 149 A. 321, 326, for a lucid and learned discussion of several questions raised in this record. On the last question the opinion holds: ''It is also said that the right is still common, since it is open to any one to obtain like permission. . . . It is conceded that as a practical proposition no such finding can be obtained, because, it is said, the business is a natural monopoly. The policy has been to keep it a monopoly for sound economic reasons. The monopoly is not in the course of nature but of good business. Its maintenance is designed to promote economies by furnishing protection against things prompted by nature. But in any event, whether the monopoly is natural or artificial, it does not belong to the utility as of common right. It is acquired by the state's grant. It is desired because it has been taken out of the field of common rights; and its exclusive character may give it value.''

Summarizing, the major questions decided are: (A) The certificate in question is a special or secondary franchise. (B) It is in the nature of personal property and taxable. (C) The situs for purposes of taxation is in Mississippi, and the situs of the particular property involved is Forrest county. (D) Section 112 of the Constitution, together with our present laws, is adequate without new legislative machinery to tax it. (E) Assess-

ment of the franchise is not imposing a tax or interstate commerce.

For the reasons indicated herein, it is my opinion the order of the board of supervisors is supported by the law and the facts and the tax should be made final.

Affirmed.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

When this case was considered and decided heretofore, the appellant's argument was addressed almost exclusively to the power to tax appellant's franchise and right in Mississippi on its lines, engaged in both interstate and intrastate commerce, between New Orleans, La., and Birmingham, Ala., passing through Forrest county in the state of Mississippi.

We had then and have now no doubt but that the property is taxable, and that it is taxable, regardless whether or not a special scheme is provided under section 112 of the Constitution authorizing a special mode of valuation and assessment for railroads and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county.

Section 135 of the Constitution provides for an assessor in each county, and section 112 and section 181 provide for taxation of property both corporate and individual; while section 3108, Code 1930, provides what property shall be exempt, all other property being taxable except that named.

When the Legislature has not provided a special mode of dealing with corporate and individual property situated in more than one county, the board of supervisors of a county and the county assessor can determine the value of property to be assessed under a statutory scheme for assessing property generally, although the property

situated in two or more counties may have a value as a unit different from the segregated items thereof. They might use the same process of ascertaining and allocating that value among the different counties, or, at least, to say what part of that value would be allocated to the county making the assessment.

However, on the suggestion of error, it is suggested that, under sections 3200 and 3208, Code 1930, this property, for taxation, should be assessed by the tax commission as state assessor of such property. This argument was not addressed to us in the original argument of the case, the argument being the property was not taxable at all. These sections of the Code read as follows:

"3200. The members of the state tax commission are constituted state assessors of railroads and other public service corporations, and they shall, upon the receipt or making of the schedules hereinafter provided for, assess the property of railroads, telegraph, telephone, sleeping car, express electric power and light companies and other public service corporations liable to taxation in the state, affixing its true value so that such property shall bear its just proportion of taxation, taking into consideration the value of the franchise and the capital engaged in the business in this state; and the state assessors of railroads and other public service corporations may adopt other and further rules necessary and proper to ascertain the value of property to be assessed by them, including the value of the franchise and amount of capital engaged in the business in this state."

"3208. Telegraph, express, sleeping car, palace car, and dining car companies, and telephone, gas (natural or artificial), street, suburban, interurban, railway (including motor bus companies operating as street cars), or pipe line company and any electric power and light companies, owning property not situated wholly in one county shall be assessed for ad valorem taxation in the same manner as railroads, and the state tax commission-

ers shall be assessors thereof, and shall perform the same duties in respect thereto as in the case of railroads, and at the same time and with like effect. The clerks and tax collectors shall perform the like duties as required in case of railroads.''

Considering these sections together, we think that, although the bus lines are not specifically named, they fall within the language ''other public service corporations,'' and that they should be assessed by the state tax commission. In such cases, a body such as the state tax commission, is better calculated to reach an impartial judgment, and to do impartial justice between public service companies and taxing districts.

After a careful consideration of the suggestion of error, we have reached the conclusion that the tax commission, and not the tax assessor and board of supervisors of the county, has the authority to make the assessment, and that the board of supervisors and the tax assessor of the county have been deprived of jurisdiction to make the assessment by virtue of the sections above referred to, which confer such power upon the state tax commission.

The suggestion of error will therefore be sustained, and the judgment of the court below reversed and the proceedings dismissed.

Suggestion of error sustained.