New Orleans, M. & C. R. Co. *v.* State.

[70 South, 355.]

1. APPEAL AND ERROR. *Grounds of error. Waiver. Railroads. Privilege tax. Right to impose. Assessments. Classification. Commerce. Burden upon. Constitutional law. Legislature. Delegation of power. Invalidity of statutes. Due process of law. Equal protection of law.*

On appeal from an order overruling a demurrer, the grounds not argued will be considered waived.

2. RAILROADS. *Privilege tax. Right to impose.*

The tax imposed by chapter 102, Laws 1912, is a privilege tax and not an *ad valorem* tax and may be imposed upon railroads doing a purely intra-state business.

3. RAILROADS. *Assessments. Classification. Commission.*

The railroad commission sits as a court of inferior jurisdiction. Its judgments in fixing assessments for *ad valorem* taxes and in

classifying the several railroads for privilege tax purposes are binding upon both the state authorities and the railroad companies assessed, unless an appeal is prosecuted in the method prescribed by statute.

4. Commerce. *Interstate commerce. Burden upon.*
   Laws 1912, chapter 102, increasing privilege taxes on railroads, and fixing the privilege tax to be imposed on all railroads is not in violation of the Constitution of the United States, Act 1, section 8, as imposing a tax or burden upon interstate commerce by assessing taxes according to interstate earnings.

5. Constitutional Law. *Legislature. Delegation of power.*
   While the legislature cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things, upon which the law makes, or intends to make, its own action depend, and so it may delegate to a railroad commission, the right to determine questions of fact; such as, whether a railroad falls within a given class for purpose of license taxes under Laws 1912, chapter 102.

6. Constitutional Law. *Invalidity of statutes.*
   One who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality. A railroad company classified for the lowest privilege tax imposed by Laws 1912, chapter 102, cannot complain that the act authorized the railroad commission to consider the "gross earnings" of each railroad in classifying it for taxation and thus worked a burden upon interstate commerce, since such "gross earnings" are construed to refer only to intrastate business.

7. Constitutional Law. *Railroads. Taxation. Due process of law.*
   The state having power to impose license taxes, and Laws 1912, chapter 102, not working any burden on interstate commerce, such act cannot be held invalid under Constitution, U. S. Amend. 14, as depriving railroads, which also run into other states, of their property without due process of law, or denying them equal protection of the laws, on the theory that in classifying such roads for taxation their interstate earnings can be considered.

Appeal from the circuit court of Forest county.
Hon. Paul B. Johnson, Judge.

Suit by state of Mississippi against the New Orleans, Mobile & Chicago Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.
*Flowers, Brown, Davis & Chambers,* for appellant.
*George H. Ethridge,* Assistant Attorney-General, for
the state.

Stevens, J., delivered the opinion of the court.

The state, through Ross A. Collins, Attorney-General,
and D. L. Thompson, Auditor of Public Accounts, brought
this action of debt against appellant, a railroad company
incorporated under the laws of Mississippi and operating
a line of railroad from Mobile in the state of Alabama,
through Mississippi, and to Middleton, Tennessee, to
recover the privilege taxes for the year 1914, imposed by
chapter 102, Laws of 1912, amending section 3856, ch.
114, of the Code of 1906. Chapter 102 of the Laws of
1912 is as follows:

"An act to increase the privilege taxes on railroads by
amending section 3856 of chapter 114 of the Code of 1906.
"Amending Code as to Privilege Tax on Railroads.

"Section 1. Be it enacted by the legislature of the
state of Mississippi, that section 3856 of chapter 114 of
the Code of 1906, levying privilege taxes on railroads
be, and the same is hereby amended so that for the pur-
pose of levying a privilege tax on railroads such railroads
are divided into five classes, first, second, third, narrow
gauge and levee district, and privilege taxes are levied
on them as follows:

"On each railroad of the first class, per mile (mileage
within the levee district or districts on which levee taxes
are paid, excepted), forty-five dollars.

"On each railroad of the second class, per mile (mile-
age within the levee district or districts on which levee
taxes are paid, excepted), twenty-five dollars.

"On each railroad of the third class, per mile (mileage
within the levee district or districts on which levee taxes
are paid, excepted), ten dollars.

"On each narrow gauge railroad, per mile (mileage within the levee district or districts on which levee taxes are paid, excepted), two dollars and fifty cents.

"On that part of each levee district railroad of the first class, within the levee district or districts, on which levee taxes are paid, per mile, twenty dollars.

"On that part of each railroad of the second class, within the levee district or districts, on which levee taxes are paid, per mile, fifteen dollars.

"On that part of each railroad of the third class within the levee district or districts, on which levee taxes are paid, per mile, seven dollars and fifty cents.

"On that part of each narrow gauge railroad within the levee district or districts, on which levee taxes are paid, per mile, two dollars and fifty cents.

"Sec. 2. The Railroad Commission shall, annually, on or before the first Monday in August, classify the several railroads according to their charter, and the gross earnings of each, and the privilege taxes theron shall be paid on or before the first day of December, and the findings of the said Railroad Commission shall be certified to the auditor of public accounts and the chancery clerk of the county through which each road or roads run; and any person or persons, natural or artificial, who shall exercise any of the privileges taxed herein, without first paying the tax and procuring the tax or license, as required by law, shall be subjected to the pains and penalties imposed by section 3894 of the Code of 1906, and to such other pains and penalties as may be otherwise provided by law.

"Sec. 3. That this act take effect and be in force from and after its passage.

"Approved March 16, 1912."

Appellant was classified by the Railroad Commission as being in the third class and liable for the privilege tax of ten dollars per mile, and, declining to pay this tax, this suit was instituted in the circuit court of Forrest county for the recovery thereof. The declaration charges

that appellant does a general intrastate business in the state of Mississippi, and operates a railroad in and through the counties of Green, Jasper, Jones, Forest, Perry, Newton, Neshoba, Winston, Choctaw, Webster, Chickasaw, Pontotoc, Union, and Tippah, and through various municipalities, which are detailed; that the Mississippi Railroad Commission had classified the railroads in the state in accordance with their charters and the gross earnings on intrastate business in the state, and that appellant had been classified as being a third class railroad within the meaning of said statute, and, by virtue of the act in question, was due to the state of Mississippi the sum of ten dollars per mile, or an aggregate sum of three thousand, five hundred and eighty-five dollars and fifty cents; that in addition, each of the municipalities mentioned in the declaration has a right under the laws of of the state to levy a privilege tax not to exceed fifty per cent of the state tax, or five dollars per mile for the mileage within its corporate limits; that a statement of the municipalities and the amounts and their rates on the number of miles within the boundaries of each is attached to the declaration as Exhibit A, and made a part thereof, and that the defendant was due the several municipalities the amount shown in the exhibit; that the privilege tax in question is required to be paid to the auditor of public accounts on or before the first day in December of each year; that the tax is due and unpaid; that demand had been made, and the defendant refused to pay. Exhibit A tabulates the counties, and gives the mileage and total tax due on mileage in each county, and likewise shows a total amount claimed by municipalities of three hundred and one dollars and fifty cents, making a grand total of three thousand, nine hundred and eighty-nine dollars.

A demurrer was interposed to the declaration, attacking the constitutionality of the statute imposing this tax and submitting: First, that the act in question is void because in contravention of article 1, section 8, of

the federal Constitution, in that it attempts to interpose a tax upon interstate commerce, and is an attempt to regulate the interstate commerce carried on by the defendant; second, that the act requires the Railroad Commission to classify railroads according to their gross earnings, and imposes a larger or smaller tax according to the amount of gross earnings as compared with the gross earnings of other carriers, and hence imposes a burden upon the interstate commerce of the defendant; third, that the statute contravenes the Fourteenth Amendment to the federal Constitution, in that it deprives the defendant of its property without due process of law and denies to it the equal protection of the law; and, fourth, that the act contravenes section 112 of the Constitution of the state of Mississippi, providing that taxation shall be uniform and equal throughout the state. The demurrer was overruled. The defendant declined to plead further, and judgment final was entered for the full demand sued for. From this judgment, appellant prosecutes an appeal, assigning as error the refusal of the court to sustain the demurrer and to hold the statute void and unconstitutional for the reasons submitted by the several grounds of the demurrer.

The assignment of errors submits that the court erred in holding the act of 1912 constitutional, and does not specify the particular grounds relied on in the court below. Counsel for appellant, in their brief, do not argue the fourth ground of the demurrer; and we take it they concede that section 112 of our state Constitution has no application to the tax here attempted to be imposed and is not really involved in this case.

Chapter 102 of the Laws of 1912 is a re-enactment, with slight variation, of a statute incorporated as section 3379 of the Code of 1892. The contention was made in *Railroad Co.* v. *Adams*, 85 Miss. 772, 38 So. 348, that this was an *ad valorem* and not a privilege tax; and in response, the court said:

"We do not concur in this, but hold that the tax sought to be collected is a privilege tax proper."

It is contended by appellant that the statute is obnoxious to and contravenes the federal Constitution, in that it imposes a burden on the interstate commerce carried on by appellant as an interstate railroad; that the statute embraces all railroads in Mississippi, both interstate and intrastate, without excepting from its operation the interstate business carried on by interstate railroads. It is further contended that the act imposes a burden on interstate commerce because of the provision directing the Railroad Commission to classify the several railroads according to the "gross earnings of each, " without exempting or excepting the earnings derived from interstate commerce and business done for the United States government. It was the purpose of the statute in question to impose on railroads a privilege tax for doing business within the confines of our state—for doing a purely intrastate business. The whole act and the chapter in which it appears in our Code show a general scheme for imposing an excise or privilege tax on various occupations, businesses, and professions within the confines of our state, to raise revenues in support of our state government, and the act assumes, of course, that the occupation or business taxed is one to be done or carried on within the state. The right of the state to impose a privilege tax on railroads for doing a purely intrastate business is not controverted. Railroad companies by right of eminent domain appropriate and occupy hallowed and valuable territory, and otherwise enjoy special privileges and franchises. Individuals and corporations other than railroads are subjected to similar taxation. For the doing of an intrastate business, therefore, there can be and is no complaint by appellant. It is chartered under the laws of our state, and admittedly is doing both an intrastate and an interstate business. This statute, which has been on our books since 1892, in the first place levies a tax upon the privilege of doing a railroad business in Mississippi, and then

for the purpose of measuring that tax it prescribes and fixes a maximum anl a minimum tax per mile on a standard gauge railroads, and, as a further means of distributing the burden in an equitable manner, empowers and directs the State Railroad Commission to classify standard gauge railroads into first, second, and third classes "according to their charter and the gross earnings of each." While the act itself levies the tax and provides that standard gauge railroads outside of the levee districts shall be divided into three classes, it yet remains that the Railroad Commission must classify before the levy is complete.

"If it be conceded that the act levies a tax, it still remains true that something more was necessary, to wit, the classification referred to." *Railroad Co.* v. *Adams*, 83 Miss. 320, 36 So. 145.

The members of the Railroad Commission are our state railroad assessors. Section 4384, Code of 1906, provides that "The members of the Railroad Commission are constituted State Railroad Assessors," and as such are charged with the duty of assessing railroads, not only for *ad valorem* taxes, but for privilege taxes. Section 4382, Code of 1906, requires each railroad company in Mississippi to file schedules with the Commission, showing, among other things—

"the gross amount of receipts the year preceding from passengers and freights separately, and the proportion thereof earned within and from this state."

It may be that the directions given the Commission by chapter 102, Laws of 1912, for classifying railroads for privilege tax purposes, are very general and, to some extent, indefinite. They are, however, given a general rule to go by, viz., to classify the several railroads according to their charter and the gross earnings of each. In construing these general provisions of the statute we must keep in view the general object to be accomplished and the character of the tribunal or Commission invested with the authority to classify. This Commission, as

stated, has exclusive jurisdiction in the matter of the assessment of all railroads for taxes, and has general supervision of all carriers in our state and sits as a court of inferior jurisdiction. Its judgments in fixing assessments for *ad valorem* taxes and in classifying the several railroads for privilege tax purposes are binding upon both the state authorities and the railroad companies assessed, unless, of course, an appeal is prosecuted in the method prescribed by statute. This was distinctly held by our court in *Railroad Co.* v. *Adams,* 85 Miss. 772, 38 So. 348, when the revenue agent attempted to backclassify certain railroads. The court, through Cox, Special Justice, says:

"The Commission classified them as railroads of the third class, and of the first, second, and third classes, respectively, saying nothing as to charter exemptions. This classification, in each case, was a judicial act. Everything was concluded by it which was comprehended or involved in it. It amounted to an adjudication that these roads were not liable for the years in question to the privilege tax of ten dollars per mile as railroads claiming exemption from state supervision. This judgment is final and conclusive, and cannot now be brought in question. *Railroad Company* v. *Adams,* 77 Miss. 778, 25 So. 355; *Railroad Company* v. *Adams,* 81 Miss. 105, 32 So. 937."

This holding was reaffirmed by us in the very recent case of *Western Union Telegraph Co.* v. *Kennedy,* 69 So. 674, declaring that the judgment of the Railroad Commission which is valid on its face but without justification in fact, could not be reviewed except by *certiorari* to the circuit court, the method of appeal provided by law. So in the instant case appellant cannot complain of any matter of fact that induced or led the Commission to place appellant in the classification or class to which it has been assigned under the act in review, unless it is shown that the entire act is unconstitutional and void *ab initio;* in other words, on all matters of fact the order of the Railroad Commission is binding on all parties.

There is another and further sufficient reason why appellant cannot complain of this classification in the instant case. It was assigned to the third or lowest class, and thereby ordered to pay the minimum tax per mile provided by the statute. Can it be said, therefore, that the whole act is unconstitutional and void, and is appellant in position to so contend? In attempting to square the act in question with the Constitution of the United States, we must of course look to the act itself, the context or subject-matter dealt with, and the general purpose attempted to be accomplished. Taking the act by the four corners and keeping in view the object to be attained, we find this statute a part of the general scheme for levying privilege taxes on the several and various kinds of business, trades, and professions done, practiced and carried on in Mississippi. The state in its sovereign capacity is exacting from those who do business and practice and enjoy their several trades and professions a tax as a condition precedent to the right of exercising the privileges. The subject of the tax in each case is the party or corporation doing business, plying his trade, or practicing his profession in Mississippi, and not, of course, in a foreign state or country. The business sought to be taxed is, in each instance, the business done within the confines of our own state. In the case of appellant the tax sought to be imposed was certainly intended to be upon the business enjoyed by it in Mississippi and as a domestic corporation. Every intelligent man knows, and the legislature in enacting this law well knew, that a tax could not be imposed by our legislative department on interstate commerce, and that no law could be passed burdening interstate commerce or seriously embarrassing railroads in doing such business, or in doing business for the United States government. It is therefore unreasonable to assume that the legislature had any intention of burdening or embarrassing interstate commerce. The act, as stated, appears in the chapter dealing with privilege taxes, and not in connection with any statutory provisions providing the

terms and conditions upon which foreign corporations may do business in our commonwealth. There is no effort here to impose hard conditions or charge fees for admitting foreign corporations or allowing railroads to do an interstate business. The subject-matter dealt with is entirely different. There is here not the slightest suggestion that the statute is attempting to discriminate against, or to impose any unreasonable regulations upon foreign corporations or upon railroads traversing our territory. This is not a tax upon any agent or agency of any interstate railroad, or upon any means employed by such railroad company to get business, as was the fact in many of the cases decided by the United States supreme court and relied on by appellant. We are not called upon to take issue with any of the pronouncements of the United States supreme court in any of the cases cited by counsel for appellant. This is not a tax on the income or gross earnings of any railroad. There is no effort here to tax the earnings of appellant or any other railroad company. The tax for the privilege of doing business in Mississippi is upon the mileage of railroads in Mississippi, and not only is this true, but the legislature, in an apparent effort to be reasonable, has fixed the maximum rate per mile, and consequently a maximum amount beyond which the tax in no case could run. In this regard it falls within the principle announced by the supreme court of the United States in *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127, as follows:

"So, if the tax is, as we hold it to be, levied upon a legitimate subject of such taxation, it is not void because imposed upon property beyond the state's jurisdiction, for the property itself is not taxed. In so far as it is represented in the authorized capital stock it is used only as a measure of taxation, and, as we have seen, such measure may be found in property or in the receipts from property not in themselves taxable."

The *Baltic Mining Company Case* is differentiated from the case at bar, but the principle announced is applicable to the instant case. A railroad company might own a transcontinental railroad running through Mississippi and earning annually millions of dollars, yet this fact could, in no way, under any view of the case, influence the Commission in fixing upon such road a tax in excess of forty-five dollars per mile, prescribed to be paid by railroads of the first class.

The direction to the Railroad Commission to consider the gross earnings of the railroads is only a part of the general directions given. They are also directed to consider the charter of the several railroad companies. We are not called upon in this case to define every element that should properly be considered by the Railroad Commission in determining the particular class to which any road should be assigned, but we do say that the act gives evidence of a general rule whereby the Commission should consider the charter rights and privileges of each company. It was the purpose of the legislature to graduate the taxes according to the business and rights enjoyed. In determining the class the legislature thought it material for the Commission to look to the general charter of the company and the extent of the rights and franchises therein conferred upon the company. Is the company in any particular case one chartered to operate a grand trunk railroad or a line of a few miles? Is it one equipped for and capable of doing a large business? In other words, a charter and charter privileges give evidence of the volume of business prepared to be done, and actually being done, by any railroad in Mississippi, and to some extent define its prosperity.

We apprehend that counsel for appellant place too great stress on the words "gross earnings." It is our judgment that the words as here employed simply mean the earnings of the road. The word "gross" is used more in contradistinction to the word "net," and the very fact that the legislature employed the words "gross earn-

ings'' evinces a purpose to establish a measure of taxation that is easy of determination. If the legislature had employed the words ''net earnings,'' then much difficulty and great confusion would result in determining the net earnings of any railroad company on its intrastate business. It would be a thing almost impossible of ascertainment. A railroad doing an interstate business would employ, to a large measure, interstate trains and equipment for doing also a purely local business, and a prorating of this expense would be at best a mere matter of estimate. The contention that the words ''gross earnings'' evidence a purpose to burden interstate commerce might as well be made in reference to the mileage and charter of an interstate railroad. Why not contend that an interstate railroad company is required to maintain a more substantial and costly roadbed, and also that the charter of a railroad company doing an interstate business in Mississippi discloses valuable rights and franchises, granted, perhaps, by a foreign state and necessary for the doing of an interstate business? But no such contention is advanced in this case. If we construe the act, however, as even authorizing the Railroad Commission to take account of the earnings derived from interstate business and business done for the United States government, we might as well also declare that the Commission can take account of the aggregate rights and franchises conferred upon the company by the sovereign of a foreign state. The legislature, however, could not have intended any such absurd result. Any interpretation of the statute must take into account the fact that the legislature in giving these directions is not itself directly imposing a tax upon the earnings of the railroad, but is investing an inferior tribunal or governmental functionary with the general authority to classify all railroads in five classes. This tribunal stands between the parties with authority to fix the classification and thereby equitably adjust the rights of all parties. In fixing the classification any railroad has the right to be heard, to offer evidence, reserve objections

to any adverse ruling, and to have the proceedings and judgment of this tribunal reviewed by the circuit court through the proper writ of *certiorari.* Authority of this kind has frequently been committed to governmental tribunals. The Interstate Commerce Commission has been given authority to make reasonable rates and to administer the law against discrimination. *Interstate Commerce Commission* v. *I. C. R. R. Co.,* 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; *I. C. C.* v. *Chicago, R. I. & P. R. R. Co.,* 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946.

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore be a subject of inquiry and determination outside of the halls of legislation." *Marshall Field & Co.* v. *Clark,* 143 U. S. 694, 12 Sup. Ct. 505, 36 L. Ed. 310.

To the same effect is the holding in *United States* v. *Grimaud,* 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. It was said, also, in the case of *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 34 Sup. Ct. 359, 58 L. Ed. 713:

"From this it necessarily results that it was competent for the legislature to lay down a general rule, and then establish an administrative tribunal with authority to fix the precise width or thickness of pillar that will suit the necessities of the particular situation and constitute a compliance with the general rule. . . . Administrative bodies with authority not essentially different are a recognized governmental institution. Commissions for the regulation of public service corporations are a familiar instance."

It is interesting and very persuasive to note in this connection that the declaration in this case avers, and

the demurrer admits, that the Mississippi Railroad Commission has actually taken into consideration only the earnings on intrastate business, and it is conceded by all parties that this simultaneous construction was placed upon the statute by the Commission and all parties in interest, and, so interpreted, the law was complied with from 1892 until recently. As a matter of fact, therefore, the Commission has not considered the gross earnings of any railroad company in determining its classification. There has never therefore been any necessity for any railroad to reserve exceptions to any finding of the Commission classifying the roads, based upon the complaint that interstate commerce has been burdened or embarrassed. The Commission saw fit to construe the statute within the narrow limits evidently intended by the legislature; and so it is, in the instant case, that appellant has not been injured by the very provision here complained of. It, therefore, well comes within the rule, announced and reiterated by both this court and the United States supreme court, that to entitle one to plead the unconstitutionality of any particular statute such party must be damaged by the alleged obnoxious provisions.

"The case in this aspect falls within the established rule that 'one who would strike down a state statute as violative of the federal Constitution must bring himself, by proper averments and showing, within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of rights protected by the federal Constitution.' " *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 32 Sup. Ct. 784, 56 L. Ed. 1197.

See, also, *Southern Railroad Co.* v. *King,* 217 U. S. 524, 30 Sup. Ct. 594, 54 L. Ed. 868, and other authorities cited in the *Standard Stock Food Company Case.* This declaration is reannounced in the *Plymouth Coal Company Case, supra.* The objection here urged in no event could apply to every provision of this statute. Certainly a

railroad company operating a narrow gauge railroad could not be heard to say that the entire act is unconstitutional and void. One must be hurt before he complains.

"One who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality, or obtain a decision as to its validity on the ground that it impairs the rights of others." 6 R. C. L. pp. 89, 90.

Appellant has not brought itself within the rule above announced. The alleged unconstitutional feature complained of has not injured it, and, so long as the Railroad Commission adheres to its construction of the statute, will never hurt either appellant or any other railroad in Mississippi. This construction, as stated, has been placed upon the act by the Commission and the revenue officers of the state, and the construction they place upon it is very persuasive with this court.

"The rule is generally accepted that when a statute is broad enough to cover matters without the state as well as within, and as applied to matters without the state it would be unconstitutional, the court may restrict the application to matters within the jurisdiction of the state, unless the statute clearly indicates a different intent." 6 R. C. L. p. 80.

We cannot give to general provisions of any statute a meaning that would lead to absurdity, or that would convict the legislature of attempting to deal with a subject clearly beyond its jurisdiction. The spirit and reason of the law certainly prevail over the strict letter. Furthermore, there is room for applying the words "gross earnings" in this statute to the gross earnings derived from the intrastate business, and not to the gross earnings of the entire system of an interstate railroad. This distinction is recognized in section 4382, Code of 1906, requiring railroad companies to file schedules with the Commission. The United States supreme court well says in the case of *Petri* v. *Bank,* 142 U. S. 650, 12 Sup. Ct. 326, 35 L. Ed. 1146:

110 Miss.—20.

"It is the duty of the court to ascertain the meaning of the legislature from the words used and the subject-matter to which the statute relates, and to restrain its operation within narrower limits than . . . the literal meaning of its language would extend to cases which the legislature never intended to include in it."

This principle of law is strongly reaffirmed and reannounced in *United States* v. *American Bell Telephone Co.,* 159 U. S. 548, 16 Sup. Ct. 69, 40 L. Ed. 255; *McKee* v. *United States,* 164 U. S. 287, 17 Sup. Ct. 92, 41 L. Ed. 439; *St. L. & S. W. R. R. Co.* v. *Arkansas,* 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265.

"It is a general and fundamental rule that if a statute be reasonably susceptible of two interpretations, one of which would render it unconstitutional and the other valid, it is the duty of the courts to adopt that construction which will uphold its validity; there being a strong presumption that the lawmaking body has intended to act within, and not in excess of, its constitutional authority." *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 546, 34 Sup. Ct. 363, 58 L. Ed. 720.

Our own court in the case of *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392, speaking through Smith, J., well says:

"Human language is not a perfect vehicle for conveying thought, and it frequently happens that words used have a broader or narrower meaning than that intended by the person using them. One of the maxims of the common law, therefore, is '*verba intentioni debent inservire.*' (Words are to be governed by the intention.) As was said by this court in *Board of Education* v. *Railroad Co.,* 72 Miss. 236, 16 So. 489, *supra;* 'It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may be beyond or

within, wider or narrower than, the mere letter of the enactment.' "

We hold that the tax here sought to be defeated is a privilege or occupation tax; that it is imposed for the privilege of doing an intrastate business; that the Railroad Commission is the governmental tribunal empowered under a general rule to classify railroads, and that this general rule is merely a guide whereby the Commissioner determines the classification. We further hold that the action of the Commission in classifying the railroad is binding upon both the state and the road classified; and, looking to the whole act and subject-matter dealt with, the legislature did not intend to hamper, burden, or embarrass interstate commerce, and the act in question ought not to be subjected to such criticism. If, then, the tax is an occupation tax and its exact amount determined by the classification and mileage, and if, further, this classification is unaffected by earnings derived from interstate commerce or business done for the government, and the Commission and revenue officers of the state have so construed it, it is difficult to understand why we should be called upon to condemn the act as unconstitutional and void and inflict upon it the death penalty when the federal Constitution is not trespassed upon and the rights of no one invaded.

*Affirmed.*

SMITH, C. J. (dissenting). The three cardinal rules for construing statutes are: First, the intent of the legislature expressed in the words it has used must govern; second, words in common use are to be given their ordinary and popular meaning; and, third, the legislative intent must—

"be determined from a general view of the whole act, with reference to the subject-matter to which it applies and the particular topic under which the language in question is used."

Another fundamental rule of the common law which it is the imperative duty of the courts to obey, is that when, by an application of the three rules above set out, the meaning of a statute is plain and unambiguous, it is not permissible to resort to any other subsidiary rules of construction, even though by so doing a different meaning can be given the statute; otherwise no lawyer would be safe in advising upon the meaning of the statute, nor would any citizen be safe in acting upon it.

The words of the statute here in question are as plain and unambiguous as it is possible for the English language to be, and provided that:

"The Railroad Commission shall . . . classify the several railroads according to . . . the gross earnings of each,"

—but is interpreted by my Associates as if it read as follows:

"The railroad commission shall classify the several railroads according to . . . the gross earnings of each derived from business transacted wholly within this state."

Such interpretation is, in my judgment, the making of a new law, not enforcing an old one; and such is not a part of the duty of the courts. That the words, "gross earnings," possibly mean no more than would have been implied by the use of the word "earnings" alone is immaterial; for the use of either implies the earnings of the road derived from every source. The absence of the word "gross" might leave room for a doubt as to whether gross or net earnings were intended, but could have no other effect.

General words of a statute may be given a limited meaning only when it is manifest from the whole statute that the legislature so intended. That such was the legislative intent may be inferred when not to limit them leads to oppression, injustice, or to an absurd consequence; but this cannot be done solely for the purpose of bringing the statute within the constitutional powers

of the legislature. If such a rule of construction exists, most of the statutes which have been heretofore declared void, because as written they affected both intrastate and interstate commerce, could have been upheld and restricted to intrastate commerce alone. That a statute covering by its language a matter both within and without the constitutional powers of the legislature can be limited by construction so as to cover only such matters as the legislature is empowered to deal with was expressly denied by the supreme court of the United States in *U. S.* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563. In that case the court had under consideration a statute enacted by Congress with reference to the holding of elections which, by its general language, regulated matters pertaining to elections both within and without the constitutional powers of Congress. The court was requested to uphold the statute by limiting and applying it solely to such matters as were within the constitutional powers of Congress. This it declined to do, and, among other things, said.

"We are therefore directly called upon to decide whether a penal statute, enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined is whether we can introduce words of limita-

tion into a penal statute so as to make it specific, when,. as expressed, it is general only.

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained,. if within the constitutional grant of power. Within its legitimate sphere, Congress is supreme and beyond the control of the courts; but if it steps outside of its constitutional limitation and attempts that which is beyond its reach, the courts are authorized to, and when called upon in due course of legal proceedings must, annul its encroachments uopn the reserved power of the states and the people.

"To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

If a state has the power so to do, the taking by it into consideration of the interstate earnings of railroads. in classifying them for the purpose of imposing privilege taxes upon them is not necessarily either oppressive or unjust, and is certainly not absurd; and, in my judgment, so to do was exactly what the legislature intended in passing the statute here in question, on the mistaken theory, of course, that it was acting within its constitutional powers. That the Railroad Commission. may have limited the statute so as to bring it within the constitutional powers of the legislature is immaterial for,. as I have hereinbefore pointed out, it is not permissible so to do.

My views with reference to the matter here under consideration will be found further expressed in the opinion of Grubb, J., in the case of *Illinois Central Railroad Co.* v. *Mississippi Railroad Commission,* 227 Fed.——, recently decided by the federal district court for the southern dis-

trict of Mississippi, wherein the court had under consideration the statute here involved, and held that it violated the interstate commerce clause of the federal Constitution.

I am of the opinion, therefore, that the judgment of the court below should be reversed, and the cause dismissed.